**PHILLIPS PETROLEUM COMPANY,**
Appellant (Petitioner below),

v.

The **PUBLIC SERVICE COMMISSION** of
Wyoming et al., Appellees (Respondents below).
No. 4448.

Supreme Court of Wyoming.
Feb. 5, 1976.

Houston G. Williams of Wehrli & Williams, Casper, and John L. Williford and Larry Pain, Bartlesville, Okl., for appellant.

David B. Kennedy, Atty. Gen., and Thomas A. Nicholas, Special Asst. Atty. Gen., Cheyenne, for appellee Public Service Commission of Wyoming.

Michael J. Sullivan of Brown, Drew, Apostolos, Barton & Massey, Casper, for appellees McCulloch Gas Transmission Co. and McCulloch Interstate Gas Corp.

Before GUTHRIE, C. J., and McCLINTOCK and THOMAS, JJ.

Guthrie, Chief Justice.

This matter reaches the court by way of an appeal from a decision and order of the Public Service Commission, which among other things held that appellant-Phillips [1] was a public utility under the jurisdiction and supervisory control of the said Commission in issuing to Phillips a certificate of public convenience and necessity for which it had not applied. Upon appeal to the district court the order of the Commission was affirmed.

Appellant herein stoutly insists, and has done so at all junctures of these proceedings, that its operations are not those of a public utility and that the Commission has no jurisdiction over these operations. This is, of course, the threshold and decisive question. Because we believe the PSC

---

1. There are various parties involved herein, who for brevity will be described as follows: Phillips Petroleum Company as Phillips or appellant; the Wyoming Public Service Commission as PSC or the Commission; the Federal Power Commission as FPC; McCulloch Gas Transmission .Company and McCulloch Interstate Gas Corporation as McCulloch or complainants; Kansas-Nebraska Gas Company as K–N; Panhandle Eastern Pipeline Company as Panhandle.

does lack such jurisdiction under our statutes and the facts as they appear of record in this case, this will be the only point considered as it results in the complete disposal hereof.

The apparent inception of this controversy was the action of Phillips in filing an application with the FPC on April 30, 1973, for authority to sell uncommitted Powder River Basin gas to Panhandle at the Mill Creek Compressor Station. McCulloch filed a petition to intervene therein, requesting a hearing and that Phillips be denied a certificate for the reason that it would commit its gas reserves and build pipelines detrimental to McCulloch's existing service facility. The FPC, in making disposal of this matter, held that the question of the issuance of the certificate covering natural gas sales would be determined by the FPC and that the Commission had no authority to prevent the construction of the pipeline by Phillips, the FPC holding that the proposed sale was at the outlet of the gas processing plant below Phillips' proposed construction but did hold that the pipeline gathering facilities to the producers up the line from the processing plant were not directly subject to its control. Thereafter this controversy arrived before the PSC by the filing on behalf of McCulloch of a complaint asking that the Commission assume jurisdiction over the pipeline, to determine that the public convenience and necessity does not justify such construction, and that construction should be halted, or for such other relief as the Commission might determine just and reasonable. Phillips answered, raising the question of jurisdiction. The Commission, as a result of this filing, directed that neither complainants nor Phillips construct any additional facilities until final disposition thereof, although apparently Phillips continued with such construction.

The pipelines which are involved in this controversy are 35-mile, 8-inch lines from the Mill Creek Compressor Station about three miles north of Gillette to extend in a northwesterly direction to Spotted Horse Field and a proposed 6-inch connecting line approximately 40,000 feet in length between that field and the L–X Field, all in Campbell County. These lines were completed by Phillips without the certificate, in the two segments mentioned before, and are used by Phillips to transport the gas from these areas to the Mill Creek Compressor Station where the gas is delivered to Panhandle, who then transports the gas to the Phillips gas processing plant near Douglas. The gas is then processed and at that point sold to Panhandle, who sells or trades a portion of this gas to K–N, which in turn transports and sells some of this gas to customers in various Wyoming towns with the remainder going out of state and to other customers. Phillips only retains the liquids from the gas which it processes, and these are then transported to Texas. The gas is purchased from the various producers by Phillips and put into this line. McCulloch also contracts with certain of the gas producers in this area and did tender a contract to Phillips to take its gas at the L–X Field, which Phillips declined to accept.

Phillips in turn agrees to deliver this wet gas at a system pressure of not more than 20 pounds, and the producers receive in payment a percentage of the proceeds received from the processed gas and for the sale of the dry gas after such processing to Panhandle at the gate of the Douglas plant. Phillips pays Panhandle for the use of the gas line bringing this gas to the Douglas plant plus a shrinkage. After the gas is processed it is then delivered to the purchaser at 500 pounds pressure and then goes into its lines. K–N has a right by agreement with Panhandle to take part of this gas, which is then commingled with gas from its Casper facility and in turn distributed to its customers in Wyoming and adjoining states. Phillips does use a small amount of this gas for its Douglas plant, over which the Commission asserts no jurisdiction. It would appear to be a rather anomalous situation, because the PSC issued a certificate of convenience

and necessity to Phillips for which it had made no application, and which was made subject only to compliance with the Commission's environmental and safety regulations.

The statute upon which the PSC must rely to acquire jurisdiction is as follows:

"Any plant, property or equipment for the transportation or conveyance to or for the public of oil or gas by pipeline, or any plant, property, or equipment, used for the purpose of transporting, selling or furnishing natural gas to any consumer or consumers within the State of Wyoming for industrial, commercial or residential use, except any such plant, property or equipment used for any of the following purposes is exempted from this and all other provisions of this chapter to the extent of such use;" Section 37–1(f)(vii), W.S.1957, 1975 Cum. Supp.

The Commission held that it had jurisdiction over Phillips and bases this upon the following finding:

"Phillips' pipeline construction is that of a public utility as defined by subsection (vii) of Section 37–1 since its facilities will be used to sell and furnish gas to a Wyoming 'consumer' (Panhandle); and its facilities will ultimately be transporting 'gas to and for the public'."

Upon review by the district court, that court made this finding in connection with the matter:

"That the Wyoming Statutes give the Commission jurisdiction over the subject gas gathering facilities of Petitioner; and that the Commission acted within its powers."

The PSC's position in support of this proposition is as follows:

"The Phillips' pipeline at issue is a public utility under the Wyoming Public Utilities Act, Section 37–1, subsection (vii).

"A. The subject pipeline will ultimately be transporting gas 'to and for the public' and will be used to sell and furnish

gas to a Wyoming 'consumer' (Panhandle).

"B. The subject pipeline is not exempted from regulation by subsection (vii)(c) [(C)] of Section 37–1."

And the argument asserted in support thereof is set out as follows:

"Phillips' pipeline construction is that of a public utility as defined by subsection (vii) of Section 37–1 since its facilities will be used to sell and furnish gas to a Wyoming 'consumer' (Panhandle); and its facilities will ultimately be transporting 'gas to and for the public'."

To meet this proposition we set out the basis upon which the PSC relied:

"* * * The proper interpretation of Section 37–1(f) is that a company which gathers gas in Wyoming is a public utility if the gas that is gathered is ultimately transported to or for the Wyoming public or ultimately sold to Wyoming consumers. Since the sale of the processed gas to Panhandle occurs in Wyoming, Panhandle is a Wyoming consumer. It is also apparent that the gas gathered by Phillips is transported to and for the Wyoming public when the ultimate use of the gas is examined. The gas sold by Phillips to Panhandle is in turn sold or traded by Panhandle to K–N. K–N then delivered a portion of that gas to the Wyoming public at Douglas, Glenrock, Glendo, Wheatland, Guernsey, Hartville, Fort Laramie, Lingle, Torrington and Lusk."

It is to be noted that no authorities are cited in connection with this argument, but because of the importance of this case we shall not indulge in the presumption that no such authorities were available, *Deeter v. State*, Wyo., 500 P.2d 68, 70; *Buckles v. State*, Wyo., 500 P.2d 518, 524, certiorari denied, 409 U.S. 1026, 93 S.Ct. 475, 34 L. Ed.2d 320; although we find it disturbing.

This poses two questions for our examination and determination. Is Panhandle a "consumer" under the statute? Does the ultimate use of a portion of this gas by

some Wyoming consumers through the pipelines of K–N constitute transporting "to and for the public"?

■ We must begin this consideration under a very general rule recognized by this court. The PSC has no inherent or common-law power, having only the power granted to it by the constitution or statutes, and these must be strictly construed, *Tri-County Electric Association, Inc. v. City of Gillette*, Wyo., 525 P.2d 3, 8–9; and the effect of this rule will be implicit in the discussion which follows.

■ Our construction, particularly of the word "consumer," is governed by statute, § 8–18(a), W.S.1957, 1975 Cum.Supp., which reiterates the rule which we have long recognized in connection with statutory construction that the words shall be taken in their "plain, ordinary and usual manner," *State v. Stern*, Wyo., 526 P.2d 344, 346; *School Districts Nos. 2, 3, 6, 9, and 10, In County of Campbell v. Cook*, Wyo., 424 P.2d 751, 757. The statute requires the application of this rule "unless such construction is plainly repugnant to the intent of the legislature," § 8–18, W.S. 1957, 1975 Cum.Supp. Our examination of the statutory framework which includes the definitional phrases here at issue persuades us that in this instance the "plain or ordinary and usual sense" rule leads to a result consistent with, not repugnant to, legislative intent. In structuring the Commission and investing it with regulatory powers, the legislature was functioning in the context of regulating commercial activities which enjoy a lawful monopoly. It might even be said that it was relying upon the words "consumer" and "public" as words of art. It is inconceivable that the legislature in any way anticipated that at some point in time these words would be relied upon to invoke the jurisdiction of the PSC when the only purpose sought to be accomplished was environmental regulation. Consequently, these words must be read and construed only in their commercial sense to arrive at the proper decision

with respect to the power and jurisdiction of the Commission.

■ In applying the "plain or ordinary and usual sense" rule, our first examination will be of Webster's Third New International Dictionary, p. 490 (G. & C. Merriam Co. 1961), where we find the following definitions: [1] "One that consumes." "One that utilizes economic goods." The obvious weakness of a definition which depends upon repetition of the term is that it makes the first definition of little value unless it is considered in connection with the definitions of "consume" which appear just preceding; and we find those definitions, so far as they are applicable herein, to be: "To destroy or do away with completely." "Cause to waste away utterly." "To spend wastefully." "To use up." We find none of these definitions applicable to Panhandle. The Texas court, in the case of *Ex parte Mehlman*, 127 Tex.Cr.R. 257, 75 S.W.2d 689, 690, utilized these definitions, absent any statutory definition, which is the posture of this case. The Utah Supreme Court, in the case of *Union Portland Cement Co. v. State Tax Commission*, 110 Utah 135, 170 P.2d 164, 171, also adopted the then definition appearing in Webster's New International Dictionary, Second Edition, which was substantially as set out above. Various other courts have so defined and applied this same concept to the word "consumer," *St. Paul & Tacoma Lumber Co. v. State*, 40 Wash.2d 347, 243 P.2d 474, 478.

Panhandle receives the dry gas at the plant of Phillips and it is placed in a pipeline over which the FPC asserts jurisdiction. Its only function insofar as K–N is concerned is to deliver certain amounts of gas which is either traded or sold to K–N. Panhandle in no manner uses, utilizes, diminishes, destroys, or even converts this gas to any other form, and is not in the contemplation of the word as above defined. It is a mere purchaser of this gas; and a purchaser has been distinguished from a consumer, *Street v. Thompson*, 131

Ill.App. 546, affirmed, 229 Ill. 613, 82 N.E. 367.

We must therefore hold that the PSC cannot assert jurisdiction over Phillips upon the basis of the fact that it sells gas to Panhandle as a consumer.

■ This leaves for our disposal the question of whether Phillips' sale to Panhandle, and the delivery of a portion thereof to K–N, constitutes transportation "to or for the public." The PSC relies upon the position that this phase is applicable if the gas is *ultimately* sold to Wyoming consumers, which is a part of the regulatory scheme of some statutes.[2] It does not, however, require much imagination to suggest that if jurisdiction may be based upon this broad theory, it is possible to follow any producer's line to the Christmas tree. This court is confined to the statute and must stay within its bounds. We would engage in a judicial process of legislative amendment if we were to insert the word "ultimate" or "ultimately" into this statute, and this is without our province, *Lo Sasso v. Braun*, Wyo., 386 P.2d 630, 631; so we are confined to determining the proper definition of "to or for the public." We find one contention of the appellee-McCulloch of particular interest and applicability herein when it suggests that the FPC's "regulatory authority attaches to sales made at the tailgate." This position is not consistent with a finding that Panhandle is a consumer, which would create jurisdiction in the PSC. This court has not had occasion to directly define or decide what the term "to or for the public" means in connection with the jurisdiction of the PSC. However, in the case of *State Board of Equalization v. Stanolind Oil & Gas Co.*, 54 Wyo. 521, 94 P.2d 147, which was a tax case, the question was presented whether *Stanolind* was operating

as a public utility for tax purposes. Under the then statute, which included the words "to and for the public," this court held that although the company bought natural gas which it conveyed by a pipeline in which it had some ownership and thereafter delivered the gas to a refinery in Casper to which it was sold, and the refinery used and consumed the gas in its operation, this was not "for the public," 94 P.2d at 156, and it could not be considered a public utility. That case further indicated that another factor for consideration is whether the company has offered to furnish the public with services or has ever filed or posted any rates or held itself out to serve consumers, generally absent here.

The words "to the public" used in the statute regulating public utilities have been defined as "sales to sufficient of the public to clothe the operation with a public interest," *Iowa State Commerce Commission v. Northern Natural Gas Company*, Iowa, 161 N.W.2d 111, 115; *Griffith v. New Mexico Public Service Commission*, 86 N. M. 113, 520 P.2d 269, 272. See *City of St. Louis v. Mississippi River Fuel Corporation*, 8 Cir., 97 F.2d 726, 728–729, for a discussion of the term "public use." Inasmuch as the record here reveals not sales to the public but only to Panhandle, Phillips cannot be classified as a public utility under our statutes. The statutes of the various states defining and regulating what is a public utility are phrased in many different and varying ways. It is difficult to find direct authority for interpretation of our statute. The writer can agree that the theory of the PSC could be sustained under some of these decisions, but the theory here asserted, being that if the gas transported is ultimately used by the public this would grant them jurisdiction, is a change in the rationale of the statutory scheme, in

---

2. The Federal Natural Gas Act, in creating jurisdiction, definitely relies on the test of resale for ultimate public consumption, 15 U.S.C.A., Ch. 15B, § 717(b), p. 315 (1963); and the statute of Indiana illustratively embraces this philosophy when it includes in its jurisdictional definition the system which transports the energy " 'either directly or indirectly to or for the public * * *.' § 54–105, Burns' 1933," *Public Service Commission v. Panhandle Eastern Pipeline Co.*, 224 Ind. 662, 71 N.E.2d 117, 127, affirmed, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128.

the writer's view. Under a statute which defined a utility as one operating a system "of supplying the public for domestic, mechanical or public uses," the Colorado Supreme Court held this did not create jurisdiction, and that it did not come under the jurisdiction of the Commission, although it sold gas directly to eleven different consumers on contract, several of whom bought part of this gas for resale, *Public Utilities Commission v. Colorado Interstate Gas Company*, 142 Colo. 361, 351 P.2d 241.

Under the preceding authorities it is our view that this sale of gas was not "to and for the public use." Although uttered in a different context, the writer views a statement in the case of *Weaver v. Public Service Commission of Wyoming*, 40 Wyo. 462, 278 P. 542, 550, as a worthwhile caveat when broad assertions are made to determine the status of a private carrier to be that of a public utility. The court said:

"* * * that a private carrier may not, in view of the Fourteenth Amendment of the United States Constitution, be converted into a common carrier against his will, * * *"

It is difficult to see the need or necessity for control or how the public will be secured any protection insofar as Wyoming consumers are concerned because this gas is sold to Panhandle, who acts merely as a wholesaler to K–N, and when that company distributes to Wyoming consumers its prices and operations are certainly under the control and regulation of the PSC.

The judgment of the district court is therefore reversed and the order of the PSC set aside.