In the Matter of the Investigation by the Commission of the Directory and Yellow Page Service of the MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, Pursuant to Wyoming Statutes and Commission Rules Requiring Commission Authority Prior to any Change in Rates, Service or Change of Ownership of Utility Facilities.

The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, Petitioner,

U S West Direct Company, Petitioner,

v.

PUBLIC SERVICE COMMISSION OF WYOMING, Respondent.

No. 86–134.

Supreme Court of Wyoming.

Nov. 20, 1987.

Paul J. Hickey, Rooney, Bagley, Hickey, Evans & Statkus, and W. Douglas Hickey, Cheyenne, for petitioner The Mountain States Tel. and Tel. Co.

Nicholas G. Kalokathis, Lathrop & Uchner, P.C., Cheyenne, and Laurie J. Bennett, Aurora, Colorado, for petitioner U S West Direct Co.

A.G. McClintock, Atty. Gen., Steven R. Shanahan, Sr. Asst. Atty. Gen., and Roger C. Fransen, Asst. Atty. Gen., for respondent.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Justice.

The question raised in this case is whether the Public Service Commission (PSC) has been authorized to regulate the publication of an advertising directory by The Mountain States Telephone and Telegraph Company (Mountain Bell). PSC concluded that it has been invested with such authority, and it ordered Mountain Bell to rescind a transaction, pursuant to which Mountain Bell had transferred the directory publishing division of its business to a sister corporation, and thereafter to submit the directory publication to competitive bidding. The significant publications are the yellow pages portions of Wyoming telephone directories. The decision of PSC was presented to the district court for review which certified the question to this court. We reverse the decision of PSC.

In the summer of 1984, Mountain Bell filed an application for a general rate in-

crease with PSC. In considering the application for a rate increase, the consumer representative staff of PSC raised the question of the transfer of Mountain Bell's directory publishing business to an affiliated corporation named U S West Direct Company (Direct). PSC proceeded to hold a separate hearing on the matter of the transfer and determined that it was not in the public interest. PSC then ordered Mountain Bell not to renew its contract with Direct for publishing Mountain Bell's directories in Wyoming and to either resume publishing the directories itself or to receive competitive bids for the publishing of the directories. Mountain Bell filed a petition for rehearing with PSC which was denied. Mountain Bell then filed a petition for review in the District Court of the First Judicial District of the State of Wyoming, in and for Laramie County. Direct also filed a petition for review asserting that it was an aggrieved party entitled to seek review under Rule 12.01, W.R.A.P. These petitions were consolidated by the district court, and the case then was certified to this court pursuant to Rule 12.09, W.R.A.P.

In its brief, Mountain Bell presents the following issues:

"1. The Public Service Commission order dated December 24, 1985, in this matter exceeded the statutory power and authority of the Public Service Commission.

"2. The Public Service Commission order is in excess of the power and authority of the Public Service Commission since it was directed at non-utility functions of The Mountain States Telephone and Telegraph Company.

"3. The Public Service Commission order is in excess of the power and authority of the PSC in that it involves the 'management' function of The Mountain States Telephone and Telegraph Company rather than the 'regulation' function of the Public Service Commission.

"4. The Public Service Commission order is violative of the commerce clause of the Constitution of the United States."

Direct sets forth the issues in its brief in this way:

"1. Should the Order of the Wyoming Public Service Commission dated December 24, 1985 be set aside under § 16–3–114(c)(ii)(C), W.S.1977, as being in excess of the statutory jurisdiction and authority of the Commission, in that it purports to regulate non-public utility activities?

"2. Should the Order of the Wyoming Public Service Commission dated December 24, 1985 be set aside as violative of the Commerce Clause of the United States Constitution?

"3. Should the Order of the Wyoming Public Service Commission dated December 24, 1985 be set aside as violative of the due process clauses of the United States and the Wyoming Constitutions, in that it purported to impose obligations upon petitioner U S West Direct Company, a non-party to the proceedings below, without proper notice and opportunity for hearing?

"4. Should the Order of the Wyoming Public Service Commission dated December 24, 1985 be set aside in that the remedy imposed (a) constitutes a taking of property from appellant U S West Direct Company without just compensation in violation of the United States and Wyoming Constitutions, and (b) is arbitrary and capricious and not in accordance with law?"

In responding to the briefs of Mountain Bell and Direct, PSC asserts that these questions must be resolved:

"I. Does the Public Service Commission have authority to regulate and supervise Mountain Bell's directory publishing operations?

"II. Was the remedy imposed by the Public Service Commission proper?

"III. Was the Public Service Commission correct in its determination that the transactions at issue were within the statutory prohibition against unreasonable discrimination and undue preferences?

"IV. Does the Public Service Commission's order violate U S West Direct's right to due process or constitute an unlawful taking?

"V. Does the Public Service Commission's order violate the Commerce Clause of the United States Constitution?"

As of January 1, 1984, American Telephone and Telegraph Company (AT & T) was required to withdraw from furnishing local telephone service. That was accomplished by transferring its local telephone service to seven regional companies which encompassed the United States. One of these regional companies is U S West, Inc. This divestiture was ordered by the United States District Court for the District of Columbia in *United States v. American Telephone and Telegraph Company*, 552 F.Supp. 131 (D.C.Cir.1982), appeal dismissed by *United States v. Western Electric*, 777 F.2d 23 (1985), cert. denied *U S West, Inc. v. United States*, — U.S. —, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987).

Prior to the divestiture order, Mountain Bell, as a wholly-owned subsidiary of AT & T, serviced Wyoming and other states in the Rocky Mountain region. After the divestiture, it continued to provide the same services as a wholly-owned subsidiary of U S West, Inc. Prior to the divestiture, Mountain Bell published its own telephone directories which consisted of both an alphabetical listing of the published telephone numbers of its subscribers, the white pages, and a topical business listing with advertising space available on request, the yellow pages. The directory publishing operations were subdivided into a listing service and a publishing service. The listing service provided a current alphabetical list of all telephone subscribers having a published telephone number, which was available to anyone desiring to purchase a subscriber list. The publishing service performed the actual function of printing both the white and yellow pages, and as a part of its business, it solicited advertising for the yellow pages. The publication of the telephone directories traditionally was a profit-making aspect of Mountain Bell's business which served to subsidize the service rates of telephone subscribers. The revenues which were derived were included by PSC in calculating permitted rates for telephone service.

Sometime prior to the effective date of the United States district court divestiture order, Mountain Bell considered the creation of a subsidiary corporation to assume the function of publishing the telephone directories. This was accomplished by a series of transactions which were effective on January 1, 1984, pursuant to which Mountain Bell transferred the assets utilized in publishing the telephone directories to a newly created subsidiary, Landmark Publishing Company (Landmark), for all of the stock of Landmark. The agreement for that transfer made it contingent upon state approval where necessary, but apparently, prior approval was sought only in the state of Colorado. Immediately following the transfer, Mountain Bell declared a dividend of the shares of Landmark to its parent and sole shareholder, U S West, Inc. The assets for publishing the telephone directory then were transferred by Landmark to Direct. Direct is a wholly-owned subsidiary of Landmark. The arrangement was completed by a contract, negotiated between Mountain Bell and Direct, pursuant to which Direct agreed to publish the telephone directories which Mountain Bell previously had provided to its telephone subscribers. The contract's term was for three years, 1984 to 1986, and it covered the seven-state area serviced by Mountain Bell. Under the contract, Direct agreed to pay Mountain Bell $315 million for Mountain Bell's promise to provide the listing service information to Direct, its billing and collection service and the exclusive right to use the Mountain Bell logo. In addition, an agreement for the transition period was made pursuant to which Mountain Bell assigned the rights under certain other contracts to Direct. It is clear that the only negotiation for the publication of the telephone directories was between Mountain Bell and Direct.

After completing this arrangement for Direct to publish its telephone directories, Mountain Bell sought the approval of PSC to increase its rates for telephone service. A hearing on that application was set, but, upon the suggestion of the consumer representative staff, a separate proceeding was conducted concerned with the possible

harm to the public interest attributable to the transfer by Mountain Bell of its publishing assets to Direct together with the agreement made with Direct to publish the telephone directories. Following that hearing, PSC found that Mountain Bell had failed to demonstrate that the "Publishing Agreement, as it presently exists, achieves the greatest economic benefit which may reasonably be achieved for Wyoming ratepayers, or is in the public interest * * *;" that the agreement "unjustly discriminated against Direct's competitors and has granted Direct an undue preference;" and that the agreement constituted "subsidization of an affiliate's publishing endeavors through favoritism and special considerations."

The first paragraph of the operative portion of the order entered by PSC provides:

"Insofar as they affect Wyoming assets, services or revenues, Mountain Bell shall immediately undertake to meet all of the conditions on its asset transfer to Landmark and Publishing Agreement with Direct as set out in paragraph 30 above. In the alternative, Mountain Bell shall immediately undertake to effect a return to the status quo existing prior to January 1, 1984 with respect to the business relationship between itself and Landmark and Direct, i.e., Mountain Bell shall recover ownership of all assets transferred to Landmark and rescind its publishing related agreements with Direct."

Paragraph 30 of the PSC's Findings and Conclusions states:

"30. The conditions are as follows:

"a. Direct shall return an updated and current Yellow Pages On Line [1] to Mountain Bell upon termination of the Publishing Agreement. If Direct ceases use of Yellow Pages On Line or fails to keep Yellow Pages on Line updated and current during the term of the Publishing Agreement, then Direct shall transfer the updated and current software and data base actually being used by Direct in place of Yellow Pages on Line.

"b. The Publishing Agreement between Mountain Bell and Direct shall terminate on December 31, 1986. Not later than 180 days prior to termination of the Publishing Agreement Mountain Bell shall submit bid specifications for a new publishing agreement to the Commission for approval. Immediately upon approval of the bid specifications or any modifications thereof as ordered by the Commission, Mountain Bell shall solicit bids directly from no fewer than five publishers which are qualified and able to sell yellow page advertising and publish directories for all of Wyoming. Mountain Bell shall also announce a general bid solicitation in media of general circulation in both the telephone and publishing industries. Not later than 90 days prior to termination of the Publishing Agreement Mountain Bell shall submit the bid which it proposes to accept to the Commission for approval. The bid shall be awarded immediately upon approval by the Commission.

"c. Prior to termination of the Publishing Agreement, the parties to the Publishing Agreement will negotiate, and submit for Commission approval, a plan for termination of the Publishing Agreement including payment of transition fees.

"d. Mountain Bell shall have the exclusive right to use the standard cover design upon termination of the Publishing Agreement."

In answering the arguments of Mountain Bell and Direct, PSC asserts statutory authority exists to regulate Mountain Bell's transfer of its publishing assets under its power to regulate all "matters related to rates and utility services and facilities" of a public utility. It argues that the publication of a telephone directory, including advertising encompassed in the yellow pages section, properly is understood to be a public service. Since Mountain Bell is a recog-

---

1. Court's note—
Yellow Pages On Line is a computer software program incorporating business advertising information utilized in publishing the yellow pages portion of the telephone directory. It was transferred by Mountain Bell to Landmark as a publishing line asset at zero value and then from Landmark to Direct.

nized public utility, PSC argues it has power to regulate the service of publishing telephone directories, including the manner of disposition of the assets devoted to publishing such directories, in order to assure the protection of the public interest.

Mountain Bell concedes its status as a public utility in Wyoming and recognizes that it is subject to the jurisdiction of PSC in delivering its utility services. It contends, contrary to the position of PSC, that the yellow pages advertising portion of the telephone directories historically has been a matter of contract between the publisher and the advertisers and not subject to the regulatory authority of PSC. For this reason, Mountain Bell contends that it was free to dispose of the directory publishing assets without seeking either prior or subsequent approval by PSC. Direct supports Mountain Bell's position in this respect.

The parties agree that the disposition of this case is controlled by the statutes. All recognize that this court cannot constructively expand statutory powers conferred upon an agency by the legislature, and the statutes which create and delegate authority to PSC must be construed strictly with any reasonable doubt as to the existence of regulatory power resolved against the exercise of such power. *Public Service Commission v. Formal Complaint of WWZ Company*, Wyo., 641 P.2d 183 (1982); *Tri–County Electric Association, Inc. v. City of Gillette*, Wyo., 525 P.2d 3 (1974). When it issued its order, PSC found the requisite statutory authority pursuant to §§ 37–2–112, 37–2–117, 37–2–119, 37–2–122, 37–2–127, 37–3–111 and 37–3–112, W.S.1977. In answering this appeal, PSC has narrowed its reliance upon statutory authority primarily to that contained in § 37–2–112, W.S.1977, which provides:

"The commission shall have general and exclusive power to regulate and supervise every public utility within the state in accordance with the provisions of this act."

In making this more limited assertion of its statutory authority, PSC also relies on the definition of "rate" found in § 37–1–102, W.S.1977:

"The term 'rate,' when used in this act, shall mean and include, in the plural number, as well as in the singular, every individual or joint rate, classification, fare, toll, charge or other compensation for service rendered or to be rendered by any public utility, and every rule, regulation, practice, act, requirement or privilege in any way relating to such rate, fare, toll, charge or other compensation, and any schedule or tariff or part of a schedule or tariff thereof."

There is no question that the legislature conferred broad powers upon PSC with respect to setting rates. That power does have limitations though, and it does not necessarily extend to every matter affecting rates, as PSC urges. We said in another case:

"PSC is not in a position to take on any aspect of utility management. It must restrict its position to 'regulation' with management decisions being entirely that of the utility." *Pacific Power and Light Company v. Public Service Commission of Wyoming*, Wyo., 677 P.2d 799, 807, cert. denied 469 U.S. 831, 105 S.Ct. 120, 83 L.Ed.2d 62 (1984).

We noted there the difficulty confronting a court in ascertaining what should be understood as managerial function as opposed to appropriate regulation. Efforts to define that distinction have led to confusion and apparently ad hoc decisions with respect to what is an invasion of the management domain as opposed to authorized regulation in the public interest.

In some instances, public utility activities which the courts once protected from regulation as a perceived invasion of management later have been held to be subject to regulation without any perceptible change in the scope of the regulatory power granted by the legislature. Compare *Pacific Telephone and Telegraph Company v. Public Utilities Commission*, 34 Cal.2d 822, 215 P.2d 441 (1950), with *General Telephone Company of California v. Public Utilities Commission*, 34 Cal.3d 817, 195 Cal.Rptr. 695, 670 P.2d 349 (1983), and

*Southern Pacific Company v. Public Utilities Commission,* 41 Cal.2d 354, 260 P.2d 70 (1953). See generally, Note, *Management Invaded—A Real or False Defense?,* 5 Stan.L.Rev. 110 (1952). In fact, in *General Telephone Company of California v. Public Utilities Commission,* supra, at n. 10, the court said "that the 'invasion of management' rationale now appears to be disfavored" because judicial limitations were increasingly imposed upon what once had been perceived as within "management functions" of utilities.

This prognostication by the Supreme Court of California may not be entirely accurate. It does not cognize a rather delicate but definite line that must be drawn between regulated but free enterprise and socialization. Free enterprise assumes the responsibility of management to investors for management's decisions. Permitting civil servants to make those determinations instead of management results in no accountability for those decisions to investors in the business. That is not compatible with even regulated monopolies in a free enterprise system. We prefer the view heretofore espoused that extensions of power by judicial construction beyond that conferred upon an agency by the legislature, either specifically or generally, is inappropriate because:

"An administrative board has no power or authority other than that particularly conferred upon it by statute or by construction necessary to accomplish the aims of the statute." *Tri–County Electric Association, Inc. v. City of Gillette,* supra, 525 P.2d at 9.

See also 1 A. Priest, Principles of Public Utility Regulation, at 9–10 (1969).

We then look to the statutes to decide whether the legislature granted to PSC the authority it purported to exercise in issuing its order to Mountain Bell. Section 37–2–112, W.S.1977, grants to PSC the "general and exclusive power to regulate and supervise every public utility" within this state in accordance with the statutes. Section 37–2–127, W.S.1977, further provides:

"In addition to the powers herein specifically granted, the commission shall have such implied or incidental powers as may be necessary and proper, effectually to carry out, perform and execute all the power so granted."

These broad powers can be exercised only over a public utility, however. *Public Service Commission v. Formal Complaint of WWZ Company,* supra; § 37–2–112, W.S. 1977. The definition of telephone service as a "public utility" is:

"Any plant, property or facility for the transmission to or for the public of telephone messages, for the conveyance or transmission to or for the public of telegraph messages, or for the furnishing of facilities to or for the public for the transmission of intelligence by electricity; * * *." § 37–1–101(a)(vi)(B), W.S.1977.

The rule of strict construction dictates that any jurisdiction in PSC is limited to those functions of Mountain Bell that are "to or for the public."

The conclusion that the legislature did not intend to extend to PSC jurisdiction over services which are not furnished to or for the public is consistent with generally accepted jurisdictional limits on regulatory bodies. We have espoused the general proposition that a utility service may have both public and private functions, and while it is subject to regulation in matters of public function, it is not when it operates in its private mode. *State Board of Equalization v. Stanolind Oil and Gas Company,* 54 Wyo. 521, 94 P.2d 147 (1939). See also *Southern Pacific Company v. Arizona Corporation Commission,* Ariz., 404 P.2d 692 (1965); *City of Phoenix v. Kasun,* 54 Ariz. 470, 97 P.2d 210 (1939); *Associated Mechanical Contractors of Arkansas v. Arkansas Louisiana Gas Co.,* 225 Ark. 424, 283 S.W.2d 123 (1955); *University Hills Beauty Academy, Inc. v. Mountain States Telephone and Telegraph Company,* 38 Colo.App. 194, 554 P.2d 723 (1976); *Oklahoma Gas and Electric Company v. Corporation Commission,* Okla., 543 P.2d 546 (1975); 64 Am.Jur.2d *Public Utilities* § 1, at 550 (1972); 73B C.J.S. *Public Utilities* § 66, at 314–315 (1983).

This conclusion also is consistent with the extent to which a state may regulate private business under its police powers; any regulation must further a public purpose. *Steffey v. City of Casper*, Wyo., 357 P.2d 456 (1960); *Minnesota Gas Company v. Public Service Commission, Department of Public Services, State of Minnesota*, 523 F.2d 581, (8th Cir.1975), cert. denied 424 U.S. 915, 96 S.Ct. 1114, 47 L.Ed.2d 320 (1976). In *Steffey v. City of Casper*, supra, at 461, we held that, in Wyoming, a business may be regulated by the legislature pursuant to the police power only when that business involves matters "affected with a public interest." In defining what "affected with a public interest" means, we said:

> " * * * So it seems that the fact that the business of a merchant is not a business affected with the public interest does not itself mean a great deal. To make that statement is to a more or less extent an arbitrary determination. It is somewhat like the ipse dixit used in connection with Aristotle in the past ages. We must go further and determine whether or not good may be accomplished by the legislation here in controversy." *Steffey v. City of Casper*, supra, 357 P.2d at 461.

In *Phillips Petroleum Company v. Public Service Commission*, Wyo., 545 P.2d 1167 (1976), we considered the effect of the service upon the public and whether or not it was offered to all of the public. Because the sale of oil and gas in that case was not made directly to the public, we found that the service was not "to and for the public," and thus, we concluded PSC had no jurisdiction to regulate the terms or manner of the sale. The critical question, then, is whether the directory publishing activities that PSC sought to regulate were services "to or for the public."

▪ In this instance, PSC made no findings with regard to whether or not the directory publishing activity of Mountain Bell was a service "to or for the public." Instead, PSC asserted its jurisdiction by establishing a connection between the revenue produced by the directory publishing service and the rates that Mountain Bell ultimately charged for those services which

are furnished "to or for the public." This is not a sufficient basis for the exercise of jurisdiction. As we noted in *Phillips Petroleum Company v. Public Service Commission*, supra, 545 P.2d at 1171:

> " * * * It does not, however, require much imagination to suggest that if jurisdiction may be based upon this broad theory, it is possible to follow any producer's line to the Christmas tree."

See also *Pacific Telephone and Telegraph Company v. Public Utilities Commission*, supra, 215 P.2d at 445 ("Almost every contract a utility makes is bound to affect its rates and services.").

▪ We recognize that a listing of telephone numbers like the white pages is part and parcel of the "service to or for the public." The majority of courts, with which we agree, have held, however, that the yellow pages portion of a telephone directory primarily is a matter of private business. *Mendel v. Mountain States Telephone and Telegraph Company*, 117 Ariz. 491, 573 P.2d 891 (1977); *Gas House, Inc. v. Southern Bell Telephone and Telegraph Company*, 289 N.C. 175, 221 S.E.2d 499 (1976); and the cases cited in those authorities. These courts have found generally that the yellow pages portion of a telephone directory is simply one source of advertising and does not constitute a monopoly service such as the furnishing of telephone service proper. They have concluded that unlike the white pages portion of the directory, the advertising contained in the yellow pages is not such an essential or integral service of telephone communication that the telephone service would be limited substantially if it were not available. Only a minority of jurisdictions have held that the yellow pages advertising is an integral function of the telephone service and a monopoly. See *Allen v. Michigan Telephone Company*, 18 Mich.App. 632, 171 N.W.2d 689 (1969); *Videon Corporation v. Burton*, Mo., 369 S.W.2d 264 (1963).

We adopt the view of the majority of the courts. The yellow pages in the Mountain Bell directories, now published by Direct, may be preferred by the public, but we see no indication of a monopoly. The evidence

in this record demonstrates that other companies throughout Wyoming are publishing alternative telephone books to that provided by Direct, including the business advertising section. When additional advertising media, such as television, newspaper, magazines and billboards, are acknowledged, the mode of advertising through the directory published by Direct cannot be perceived as a monopoly. Any need to regulate a business in the public interest is substantially diminished in the absence of a monopoly. As one commentator has pointed out, the very purpose of the regulation of public service utilities is founded on the principle of natural monopolies. 1 A. Priest, Principles of Public Utility Regulation, supra, at 1.

We conclude that the primary purpose of the yellow pages portion of the telephone directory is to provide a mode of advertising to businesses so that they may solicit the general public to patronize their businesses or purchase a particular product. That advertising function cannot be found to be such an integral part of telephone service that it is necessary to regulate it for the protection of the public. Consequently, even though PSC made no finding that the directory publishing activities, over which it had attempted to exercise its jurisdiction, constituted a service to or for the public, there is no justification for remanding the case for that factual matter to be addressed.

Our conclusion is compatible with that reached earlier by PSC that its jurisdiction did not extend to contractual disputes over yellow pages advertising. See *In the Matter of the Formal Complaint of Bruce Bergland v. Mountain States Telephone and Telegraph Company,* PSC Docket No. 9343 SUB 24 (January 26, 1983). Furthermore, PSC historically has not required a certificate of public convenience and necessity over any other business which engaged simply in the publishing of telephone directories, and normally that requirement is essential to subjecting a business to the jurisdiction of PSC. See § 37–2–205, W.S. 1977. Finally, the rules which PSC has promulgated require a telephone company to publish only the white pages portion of the directory. Rules of Practice and Procedure of Public Service Commission of the State of Wyoming, § 513 (1979). The present attempt by PSC to expand its jurisdiction is not only inconsistent with its practice but beyond its statutory powers.

■ We hold that PSC had no statutory authority to justify its order requiring Mountain Bell to adjust the terms pursuant to which it disposed of its directory publishing assets or activities. We specifically do not include in that ruling any suggestion that PSC is without power to require Mountain Bell to account for the financial impact of the transfer of its directory publishing activities upon any rate Mountain Bell seeks to charge the public in any future proceedings. The legislature indeed has conferred upon PSC broad powers in assessing rates. See *Application of Northwestern Bell Telephone Company,* Minn. App., 367 N.W.2d 655 (1985); *Mountain States Telephone and Telegraph Company v. Corporation Commission,* N.M., 653 P.2d 501 (1982); *State ex rel. Utilities Commission v. Southern Bell Telephone and Telegraph Company,* N.C., 299 S.E.2d 763 (1983). All of the parties agreed at the time of oral argument that PSC could account for any adverse impact the transfer of the publishing line of assets to Direct might have on rates charged by Mountain Bell and refuse to allow any increase in rates premised upon the loss of revenue from the directory publishing activities. We agree that their view is correct.

In its brief, Direct argues, in addition to the proposition that PSC had no jurisdiction over directory publishing activities without regard to the identity of the publisher, that it is a private company which is not subject to PSC jurisdiction. It contends that PSC had no power to issue an order affecting its assets. PSC did not urge its jurisdiction over Direct, and because of the disposition of this case, there is no need to address the question of any apparent assertion of jurisdiction over Direct. Furthermore, because we agree with appellants that the order of PSC exceeded its jurisdiction, there is no need to address the constitutional ques-

tions asserted by the appellants. *Marion v. City of Lander*, Wyo., 394 P.2d 910 (1964), cert. denied 380 U.S. 925, 85 S.Ct. 929, 13 L.Ed.2d 810, reh. denied 380 U.S. 989, 85 S.Ct. 1352, 14 L.Ed.2d 283 (1965).

This case came to us as a certified case pursuant to Rule 12.09, W.R.A.P. In accordance with § 16–3–114(c)(ii)(C), W.S. 1977, we must:

"(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

* * * * *

"(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right; * * *."

The order of PSC is reversed.[2]

---

2. We reject the broad constructions argued by PSC for specific provisions contained in the statutes, §§ 37–1–101, et seq., without addressing each statutory provision because of our conclusion that the jurisdiction of PSC does not extend to matters such as the publication of the yellow pages directory which is not a service furnished to or for the public.