**In the Matter of the MINNESOTA INDEPENDENT EQUAL ACCESS CORPORATION'S APPLICATION FOR a CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY.**

**No. C1–91–1041.**

Court of Appeals of Minnesota.

Nov. 19, 1991.

Review Denied Jan. 30, 1992.

in the second degree.

Joan L. Volz, David G. Seykora, William M. Ojile, Jr., Minneapolis, for Relator US West Communications.

Hubert H. Humphrey, III, Atty. Gen., Margie E. Hendriksen, Sp. Asst. Atty. Gen., St. Paul, for respondent Minnesota Public Utilities Com'n.

Scott Wilensky, Sp. Asst. Atty. Gen., St. Paul, for respondent Minnesota Dept. of Public Service.

Gary R. Cunningham, Sp. Asst. Atty. Gen., St. Paul, for respondent Atty. Gen.

Richard J. Johnson, Michael J. Bradley, Maureen A. Scott, Moss & Barnett, Minneapolis, for respondent Minnesota Independent Equal Access Corp.

John B. Van de North, Jr., Mark J. Ayotte, Briggs & Morgan, St. Paul, Larry Salustro, AT & T Communications, Chicago, Ill., for respondent AT & T Communications of the Midwest, Inc.

Amy Klobuchar, Warren Spannaus, Erik Ahlgren, Dorsey & Whitney, Minneapolis, David Gilbert, MCI Telecommunications Corp., Chicago, Ill., for MCI.

Considered and decided by PARKER, P.J., and FOLEY and KLAPHAKE, JJ.

## OPINION

PARKER, Judge.

US West Communications, Inc., obtained a writ of certiorari, seeking review of a decision by the Minnesota Public Utilities Commission. US West argues the Commission erred by requiring it to appear on customer ballots in all future centralized equal access service areas in which US West was already providing long-distance service. We affirm.

## FACTS

As a preface to the facts of this case, we provide the following glossary of terms, which we hope will be of assistance to the reader.

ILEC: Independent Local Exchange Company; a provider of local telephone service primarily in small communities and rural areas.

LATAs: Local Access and Transport Areas; service areas resulting from the divestiture of AT & T in 1984. There are five LATAs in Minnesota.

IntraLATA: Service within a LATA, including "short-haul" long-distance calling.

InterLATA: Long-distance service between LATAs.

As may be immediately apparent from our inclusion of this glossary, the terms and issues involved in this appeal are not often considered by the courts, but lie more within the experience of the Commission.

As further assistance to the reader, we provide a brief summary of the history leading to the present controversy.

Prior to the breakup of its telephone services network in 1984, respondent AT & T was a monopoly provider of "1+" long-distance services. Customers using other long-distance carriers were required to dial access codes at the beginning of each call.

Following antitrust litigation between AT & T and the U.S. Justice Department, a federal district court entered a Modification of Final Judgment ("MFJ"). *United States v. American Telephone & Telegraph Co.*, 552 F.Supp. 131 (D.D.C.1982), *aff'd, sub. nom., Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). The MFJ required divestiture by AT & T of its local telephone companies, known as the Bell Operating Companies, including Northwestern Bell Telephone Company. Northwestern Bell was subsequently restructured and renamed "US West."

After the MFJ was entered, the federal district court approved AT & T's plan to divide the country into LATAs. *United States v. Western Electric Co., Inc.*, 569 F.Supp. 990 (D.D.C.1983). The MFJ required that the Bell Operating Companies provide interLATA equal exchange access to other long-distance companies. The MFJ also limited the Bell Operating Companies to providing local and intraLATA long-distance service.

The MFJ left control of intraLATA competition to the states. In 1987, the Com-

mission ordered US West to provide 1+ intraLATA long-distance service to all of Minnesota's local telephone companies ("ILECs") for two years, or until a permanent plan could be established. *In the Matter of a Summary Investigation into IntraLATA Toll Access Compensation for Local Exchange Carriers Providing Telephone Service Within the State of Minnesota*, Docket No. P–999/CI–85–582 (Jan. 11, 1988) ("Docket 582"). During this two-year period, other long-distance companies could provide intraLATA long-distance service in Minnesota, but they could not provide 1+ service; their customers were required to dial additional access codes.

On February 6, 1989, respondent Minnesota Independent Equal Access Corporation ("MIEAC"), a private company, filed an application with the Commission, requesting authorization to provide a centralized equal access service to the ILECS. Pursuant to MIEAC's proposal, an equal access customer could preselect any long-distance company as a 1+ carrier. When the customer would make a 1+ long-distance call, the call would be channeled to a central location, where MIEAC switching equipment would determine which long-distance company the customer had chosen. The call would then be routed to that long-distance company's network. Under this plan, every long-distance company would have an equal opportunity to be a 1+ provider for customers within MIEAC's network.

Under MIEAC's proposal, any ILEC customer could pre-subscribe to the equal access service for both interLATA and intraLATA service. The pre-subscription method would be by a customer balloting process.

In its application for centralized equal access service authority, MIEAC requested that US West be required to maintain intraLATA service availability in any ILEC exchange participating in the equal access service. MIEAC also proposed that AT & T be required to maintain interLATA service availability in the participating ILEC exchanges. MIEAC did not propose similar requirements for any other long-distance carriers.

AT & T agreed to the proposed requirement, but US West objected, claiming that it should have the same option as any other long-distance company to choose the ILEC exchanges upon whose ballots it wished to appear. The controversy on appeal concerns only intraLATA service and US West's purported attempt to limit its ballot offerings to particular ILEC exchanges.

Although US West claimed it had the right to refuse to appear on ballots, it never stated it would cease providing service to any ILEC area. Rather, US West indicated that its services would always be available to all ILEC customers, even if US West's name did not actually appear on a particular ballot.

The Commission referred MIEAC's application for centralized equal access service to an administrative law judge ("ALJ") for a contested-case hearing. Following the hearing, the ALJ issued findings of fact, conclusions of law, and a recommendation that US West should not be required necessarily to appear on all equal access ballots. The ALJ reasoned that US West should be allowed the opportunity to justify geographic service limitations in advance of balloting on a case-by-case basis.

The Commission reviewed the ALJ's recommendations and heard arguments by the parties. On March 13, 1991, the Commission issued an order requiring US West to appear on all equal access ballots. The Commission concluded that US West's intent to appear selectively on only some ballots would be an unreasonable limitation of its long-distance service offerings, in violation of Minn.Stat. § 237.60, subd. 3 (1990).

US West has obtained a writ of certiorari, seeking review of the Commission's decision.

## ISSUES

1. Did the Commission err by concluding that service area limitations are prohibited by Minn.Stat. § 237.60, subd. 3 (1990)?

2. Did the legislature intend to include equal access balloting within the meaning of the term "service offering" in Minn.Stat. § 237.60, subd. 3?

3. Did the Commission err by determining that US West's intent to appear selectively on certain ballots would constitute an unreasonable limitation of service?

4. Did the Commission's application of Minn.Stat. § 237.60, subd. 3, render it, in effect, impermissible "special legislation"?

5. Has the legislature evidenced an intent to require Commission approval before a telephone company may discontinue long-distance service?

## DISCUSSION

### I

The Commission determined that US West's selective appearance on only certain equal access ballots would constitute an unreasonable limitation of service offerings in violation of Minn.Stat. § 237.60, subd. 3 (1990):

> No telephone company shall offer telecommunications service within the state upon terms or rates that are unreasonably discriminatory. *No telephone company shall unreasonably limit its service offerings to particular geographic areas* unless facilities necessary for the service are not available and cannot be made available at reasonable costs. The rates of a telephone company must be the same in all geographic locations of the state unless for good cause the commission approves different rates. A company that offers long-distance services shall charge uniform rates and charges on all long-distance routes and in all geographic areas in the state where it offers the services.

(Emphasis added.)

US West argues that this statute, when read as a whole, evidences a legislative intent to regulate only price discrimination, and not also service territory limitations. The Commission disagreed, concluding that one intent of the statute was to prohibit telephone companies from unreasonably limiting services to particular geographic areas.

■ The primary object in construing statutory language is to ascertain and effectuate the legislature's intent. Minn. Stat. § 645.16 (1990). Where statutory language is clear and unambiguous, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.*

■ We will consider administrative interpretations of statutes. Minn.Stat. § 645.16(8) (1990). Where a statute is unambiguous, however, its wording controls over an agency's interpretation. *In re Minnesota Joint Underwriting Ass'n*, 408 N.W.2d 599, 605 (Minn.App.1987).

■ The Commission properly concluded that Minn.Stat. § 237.60, subd. 3, was intended to regulate service limitations as well as price discrimination. The Commission's interpretation of Minn.Stat. § 237.60, subd. 3, is supported by legislative history leading to the statute's enactment. A task force report preceding the proposed legislation stated:

> Legislation should include the following provisions:

> A telephone company offering a competitive or emerging service in a given geographic market must offer that service on a nondiscriminatory basis in its other geographic service areas as well.

*Report of the Interagency Task Force on Telecommunications Regulation* (Dec. 1986).

Perhaps more importantly, however, the Commission's interpretation of Minn.Stat. § 237.60, subd. 3, is supported by the plain language of the statute. The first sentence of Minn.Stat. § 237.60, subd. 3, prohibits discrimination by a telephone company based upon "terms or rates." We believe the legislature intended that "terms" of service include service offerings. We find support for this conclusion in the second sentence of the statute, which specifically prohibits a telephone company from unreasonably limiting its "service offerings to particular geographic areas." US West's construction of Minn.Stat. § 237.60,

subd. 3, as prohibiting only rate, and not service area, discrimination impermissibly disregards the first two sentences of the statute and focuses instead upon the discussion of rate discrimination. *See* Minn. Stat. § 645.17(2) (1990) ("The legislature intends the entire statute to be effective and certain").

A discriminatory denial of service offerings is certainly as harmful as discrimination based on price. To prevent either result, the legislature provided the Commission with authority to prohibit both price discrimination and unreasonable limitations of service offerings.

Although we find independent support for affirming the Commission's authority to regulate service area limitations, we also acknowledge that we would be reluctant at this time to overrule the Commission's judgment on issues of telephone service. Our review of these issues requires caution, in light of the rapid technological growth in the area of telephone service. Decisions made today have the potential for ramifications which may be difficult for us to foresee at this time. During this transition period, it is imperative that we not unduly circumscribe the Commission's authority, lest the entire equal access experiment fail.

## II

■ Minn.Stat. § 237.60, subd. 3, prohibits a telephone company from unreasonably limiting its "service offerings" to particular geographic areas. US West argues the legislature did not intend that equal access balloting be included within the meaning of the term "service offerings."

Whether the balloting is a "service offering" is a question that, again, lies within the particular expertise of the Commission and, again, the plain language of the statute itself supports the Commission's interpretation.

The Commission construed the term "service offering" as "certainly broad enough to include activity that determines whether a service is in reality offered or not offered." We agree. A balloting process is certainly an "offering" of services.

The Commission noted that the balloting process would be the only way US West's services would be initially "offered" to ILEC customers. The Commission properly concluded that the nonappearance of US West on customer ballots would be tantamount to a misrepresentation that US West would not be available as a 1+ provider of intraLATA service.

## III

■ Minn.Stat. § 237.60, subd. 3, provides that a telephone company shall not "unreasonably" limit its service offerings to particular geographic areas. The Commission determined that US West's proposed limitation of its appearance on equal access ballots would be an unreasonable limitation of service offerings. Given the Commission's decision that balloting is a service offering, US West has not contested on appeal the Commission's decision that US West's proposed refusal to appear on the ballots would be unreasonable, nor have respondents filed a notice of review. It is therefore unnecessary for us to address the issue. *See* Minn.R.Civ.App.P. 106; *In re Continental Telephone Co. of Minnesota, Inc.,* 358 N.W.2d 400, 404 (Minn.App.1984), *aff'd in part, rev'd in part,* 389 N.W.2d 910 (Minn.1986) (on writ of certiorari, respondent may properly raise additional issues by filing notice of review); *Smoliak v. Myhr,* 361 N.W.2d 153, 157 (Minn.App.1985) (court will decline to address additional issue raised by respondent where respondent failed to file a notice of review).

## IV

■ The Commission's decision required only US West, and not other long-distance telephone companies, to appear on all equal access ballots. According to US West, the Commission's action results in a construction of Minn.Stat. § 237.60, subd. 3, as special legislation, prohibited by the Minnesota Constitution, Article XII, section 1. *See Visina v. Freeman,* 252 Minn. 177, 197, 89 N.W.2d 635, 651 (1958) ("To whatever class the law applies, it must apply to every

member of that class; that is to say, it must treat all alike who are similarly situated").[1]

We conclude that US West's arguments must fail, since US West and other telephone companies are not "similarly situated." First, US West was the only company that indicated throughout the proceedings that it might not appear on all ballots. Perhaps this is due to the fact that, in its application for centralized equal access service authority, MIEAC suggested that only "current" providers of 1+ service should be required to appear on the ballots. Nevertheless, only US West indicated a reluctance to appear on all ballots; thus, the Commission's decision addressed only the issue of US West's obligation. Issues of the obligations of other companies may be raised and addressed in future Commission proceedings.

US West and other telephone companies are also not "similarly situated," because US West is the current monopoly provider of 1+ intraLATA service and has, singularly, the economic capacity to absorb local losses and spread them over a greater geographic area. No other companies presently have the same facilities or financial resources as has US West. Even after the centralized equal access service becomes available, US West will have unparalleled financial resources as well as unique knowledge and experience in the intraLATA toll market. The Commission's order simply ensures that customers be allowed to maintain the service they have received from US West in the past.

US West argues that the Commission's decision impermissibly distinguishes between US West and AT & T by requiring only US West to appear on intraLATA ballots. However, US West and AT & T are not similarly situated. AT & T has not provided intraLATA long-distance calling (other than 1–800 and 1–900 service) since divestiture in 1984.

Because US West's position within the telephone industry is not similar to the position of other telephone companies, the Commission's order was properly limited to the issue of US West's ballot obligations. An imposition of similar ballot obligations upon the dissimilarly situated companies would have been inequitable. "It was a wise man who said there is no greater inequality than the equal treatment of unequals." *Dennis v. United States,* 339 U.S. 162, 184, 70 S.Ct. 519, 526, 94 L.Ed. 734 (1950) (Frankfurter, J., dissenting).

## V

The legislature has specifically stated that a telephone company may not discontinue any "noncompetitive" service without Commission approval. Minn.Stat. § 237.58, subd. 3 (1990). US West argues that, conversely, Commission approval is not necessary for discontinuance of "competitive" long-distance service; otherwise, use of the word "noncompetitive" in Minn. Stat. § 237.58 would be superfluous.

The legislature has treated noncompetitive, competitive, and emerging competitive services differently, in different statutory provisions. Long-distance service is considered "emerging competitive." Minn. Stat. § 237.59, subd. 1 (1990). Statutory provisions governing noncompetitive services are therefore not relevant to long-distance service.

At present, emerging competitive services continue under Commission regulation; thus, the Commission must have the authority to determine whether US West may discontinue intraLATA long-distance service.[2] Once a competitive model is established, the legislature may determine that Commission regulation of service limitations is no longer necessary.

## DECISION

The Commission's order requiring US West to appear on all equal access ballots is within the Commission's authority and is

---

1. The Commission did not address US West's special-legislation arguments; however, the issue is properly raised and argued on appeal.

2. We note that US West's arguments may be irrelevant since, according to US West itself, it is not attempting to "discontinue" service to ILEC exchanges.

supported by the language and history of Minn.Stat. § 237.60, subd. 3.

Affirmed.