U S WEST COMMUNICATIONS, INC., Appellant (Petitioner),

v.

WYOMING PUBLIC SERVICE COMMISSION; Steve Ellenbecker, Doug Doughty, and Kristin H. Lee, in their official capacities as Commissioners of the Wyoming Public Service Commission, Appellees (Respondents), and AT & T Communications of the Mountain States; MCI Telecommunications Corporation; and McLeod Telemanagement, Inc., n/k/a McLeod USA, Intervening Appellees.

No. 97–146.

Supreme Court of Wyoming.

Oct. 18, 1999.

Rehearing Granted Dec. 13, 1999.

---

Representing Appellant: Paul J. Hickey of Hickey, Mackey, Evans, Walker & Stewart, Cheyenne, WY; and William P. Heaston of U S West Communications, Inc., Denver, CO. Argument by Mr. Hickey.

Representing Appellees: William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Carrol S. Verosky, Assistant Attorney General. Argument by Ms. Verosky.

Representing Intervening Appellees: For AT & T: Alan B. Minier of Rothgerber, Johnson & Lyons, LLP, Cheyenne, WY; and Michele Singer of AT & T, Denver, CO. For McLeod USA: Elizabeth Zerga of Herschler, Freudenthal, Salzburg, Bond & Zerga, P.C., Cheyenne, WY. For MCI: Michael Rosenthal of Hathaway, Speight & Kunz, LLC, Cheyenne, WY. Argument by Mr. Minier and Ms. Zerga.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

LEHMAN, Chief Justice.

At issue in this case is the construction of the Wyoming Telecommunications Act of 1995, Wyo. Stat. Ann. §§ 37–15–101 et seq. (the Act) as it applies to U S West's intention to discontinue its Centrex Plus service. The Public Service Commission found that Centrex Plus is a noncompetitive and essential telecommunications service as set forth in Wyo. Stat. Ann. § 37–15–103(a)(iv) (Lexis 1999) and, therefore, refused to allow U S West to withdraw the service. The Public Service Commission also determined that the plans to "grandfather" the discontinuance of the service are unreasonably discriminatory. We reverse in part and affirm in part.

---

* Chief Justice at time of oral argument; retired November 2, 1998.

## ISSUES

Appellant U S West presents the following issues for review:

I. Did the Public Service Commission of Wyoming err when it concluded that Centrex Plus is a non-competitive, essential service under the Wyoming Telecommunications Act of 1995?

II. Did the Public Service Commission of Wyoming err when it required U S West to bear the burden of proof to show that Centrex Plus is a competitive, non-essential service under the Wyoming Telecommunications Act of 1995?

III. Did the Public Service Commission of Wyoming err when it concluded that U S West's plan to grandfather Centrex Plus is unreasonably discriminatory under the Wyoming Telecommunications Act of 1995?

IV. Did the Public Service Commission of Wyoming err and exceed its statutory authority when it concluded that discontinuance of Centrex Plus is inconsistent with the Federal Telecommunications Act of 1996?

Appellee Public Service Commission states the issues as follows:

I. Did the Public Service Commission act within the scope of its statutory authority in concluding that Centrex Plus is a non-competitive, essential service under the Wyoming Telecommunications Act of 1995?

II. Did the Wyoming Public Service Commission correctly determine that the grandfathering of Centrex Plus service by U S West is unreasonably discriminatory under the 1995 Wyoming Telecommunications Act?

III. Did the Wyoming Public Service Commission exceed its authority when it concluded that discontinuance of Centrex Plus is inconsistent with the Federal Telecommunications Act of 1996?

IV. Was the Wyoming Public Service Commission correct in determining that the burden of proof to show that Centrex Plus is a competitive, non-essential service is on U S West pursuant to the Wyoming Telecommunications Act of 1995?

Intervening Appellees, AT & T Communications of the Mountain States, MCI Telecom-munications Corporation, and McLeod Tele-management, Inc., (Intervenors) suggest there are eight issues to be determined. Intervenors' lengthy statement of the issues, however, sheds no additional light on the nature of the dispute; we, therefore, decline to repeat the issues here.

## FACTS

Centrex Plus (also known as Centron) is an optional business service which allows a customer using a number of telephone lines to include the lines in a single-switched system. Each individual telephone can make and receive calls from other telephones within the system, typically by dialing only the last four digits of the called number. The service can also make and receive calls from telephones outside the system through connection and access to the central office switch. Utilizing physical facilities owned by U S West, Centrex Plus includes standard features such as call forwarding, call hold, call waiting, conference calling, individual line billing, last number redial, speed calling and other features. Although the features are similar to a private branch exchange (PBX), a PBX differs from Centrex Plus in that the PBX utilizes a switch located on the customer's property. The customer owns or leases the switch and, unlike Centrex Plus' direct access to the public switched network, the PBX access is through a trunk connection to U S West's central office.

On February 5, 1996, U S West filed a price schedule with the Public Service Commission (the Commission) in which it gave the Commission notice that it intended to discontinue offering Centrex Plus to new customers as of February 6, 1996. U S West further stated its intention to continue Centrex Plus service to existing customers, subject to certain revised terms and conditions, through the duration of its longest existing contract for the service which ends on April 29, 2005. Pursuant to these plans, U S West proposed to move the service to the obsolete section of its price schedules.

Shortly thereafter, Intervenors filed separate objections to U S West's filing, generally contending that the withdrawal of Centrex Plus service deterred Intervenors' access to

the Wyoming local exchange market through the resale of the service, thus rendering U S West's plans anti-competitive. Intervenors also claimed the grandfathering of Centrex Plus services solely to its existing customers unreasonably discriminated against new customers desiring the service. In response to the objections, the Commission scheduled an investigation and hearing on May 6, 1996. After the contested case hearing, the Commission issued a Notice and Order Setting Additional Public Hearing to reopen the record for further legal argument and evidence. This order directed U S West to submit evidence showing that Centrex Plus is a service subject to competition.

U S West filed a motion to set aside the notice, alleging any burden of proof resided with Intervenors because Centrex Plus was a competitive service by statutory definition and had been recognized as such in previous Commission rulings. U S West concluded that the withdrawal of the service was, therefore, not subject to the Commission's approval. U S West's motion was denied, and no party presented additional evidence at the subsequent hearing.

The Commission issued its Memorandum Opinion, Findings and Order on September 6, 1996, denying U S West's movement of Centrex Plus service to the obsolete section of its price schedules and the grandfathering of the service. The Commission concluded that Centrex Plus service is an "essential telecommunications service" as defined in Wyo. Stat. Ann. § 37–15–103(a)(iv), and therefore subject to regulation as a noncompetitive local exchange service pursuant to Wyo. Stat. Ann. § 37–15–202(c) and 37–15–404(c). The Commission further determined the proposed withdrawal and grandparenting of Centrex Plus service "unreasonably discriminates" in favor of U S West's current subscribers, to the exclusion of other prospective customers including other potential telecommunications companies. In addition, the Commission found the proposed withdrawal of Centrex Plus service violated certain provisions of the Federal Telecommunications Act of 1996, specifically, 47 U.S.C. §§ 251(b)(1) and 251(c)(4).

After the Commission's denial of U S West's petition for rehearing, U S West then filed a petition for review in the district court. The district court, on its own motion, certified the case to this court pursuant to W.R.A.P. 12.09.

## STANDARD OF REVIEW

 When a case is certified pursuant to W.R.A.P. 12.09(b), we apply the appellate standards applicable to the court of the first instance. *Union Tel. Co., Inc. v. Pub. Serv. Comm'n,* 907 P.2d 340, 341–42 (Wyo.1995). The scope of review of an agency decision is governed and defined by the Wyoming Administrative Procedure Act, Wyo. Stat. Ann. § 16–3–114(c) (Lexis 1999), which provides in relevant part:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party.... The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

. . .

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

... [or]

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

The primary object in construing statutory language is to ascertain and effectuate the legislature's intent. Where statutory language conveys a clear and definite meaning, this court neither faces the need nor acquires the license to construe that statute. *Matter of SYM,* 924 P.2d 985, 987 (Wyo.1996).

## DISCUSSION

At issue in this case is whether the Commission is authorized under the Act to rule on U S West's proposal to discontinue the Centrex Plus service. If present, the Commission's authority is found in Wyo. Stat. Ann. § 37–15–404(a) and (c) (Lexis 1999).

### Competitive and Noncompetitive Services

· ■ Section 37–15–404(c) provides as follows:

Protection of telecommunications consumers.

(c) A telecommunications company providing a noncompetitive telecommunications service shall not discontinue providing the service without the commission's approval.

Under the clear language of the statute, the Commission's approval for discontinuance of a service is limited to only noncompetitive services. U S West claims that Centrex Plus is a competitive service under the Act and, therefore, the Commission had no authority to rule on whether the service may be discontinued.

■ Whether the Centrex Plus service is competitive or noncompetitive involves a review of the Act's interconnected definitional provisions. A "noncompetitive service" is defined in Wyo. Stat. Ann. § 37–15–103(ix) (Lexis 1999) as "those services which have not been found *by the legislature* or the commission to be competitive in accordance with W.S. 37–15–202." [1] Thus two entities, the legislature and the Commission, have power to designate services as competitive. In turn, Wyo. Stat. Ann. § 37–15–202 establishes the means by which these entities may find the services to be competitive.[2] Section 37–15–202(c) embodies the legislature's finding on the services which it considers to be competitive:

(c) Local exchange services provided by resale, telecommunications services provided by interexchange telecommunications companies, and *telecommunications services other than local exchange service*, switched access and interexchange telecommunications services provided by a local exchange company *shall be considered subject to competition for purposes of regulation under this title*.

(Emphasis added.)

A local exchange service is defined as "the provision of *essential telecommunications service* within a local exchange area," another term which is defined as follows:

(iv) "Essential telecommunications service" means a customer's access to service that is necessary for the origination or termination, or both, of two-way, switched telecommunications for both residential and business service within a local exchange area. Essential telecommunications services are limited to:

(A) Access to interexchange services provided by interexchange telecommunications companies;

(B) Single line flat-rate or single line measured residence or business service;

(C) Transmission service and facilities necessary for the connection between the end user's or customer's premises or location and the local network switching facility including the necessary signaling

---

1. Similarly, "competitive services" are defined by Wyo. Stat. Ann. § 37–15–103(iii) (Lexis 1999) as "those services found by the legislature or the commission to be competitive in accordance with W.S. 37–15–202." In this case, U S West argues that earlier Commission decisions tacitly recognize Centrex Plus as a competitive service. The Commission responds that no precedential value may be derived from any informal order issued prior to the passage of Wyo. Stat. Ann. § 37–15–202 regarding the competitive nature of a service. We need not resolve this issue, however, since we rely solely on the legislature's definition of a competitive service for our determination.

2. Section 37–15–202(a) & (b) provides alternative methods of seeking classification of a service as competitive or noncompetitive. Subsection (a) describes the procedure by which a telecommunications company may request the Commission to find a service competitive. Subsection (b) explains how someone other than a telecommunications company may seek to have the Commission consider whether a service under subsection (a) is no longer competitive.

Neither of these subsections apply in this case, however, since U S West did not seek classification under subsection (a), and the Commission insists that it never found Centrex Plus to be competitive, therefore negating the applicability of (b).

service used by customers to access essential telecommunications services;

(D) Services necessary to connect 911 emergency services to the local network;

(E) Switched access, which for the purposes of this chapter shall mean the switching and transport necessary to connect an interexchange telecommunications company with the local exchange central office for the purpose of originating or terminating, or both, the interexchange telecommunications company's switched telecommunications service.

Wyo. Stat. Ann. § 37–15–103(a)(viii) & (iv) (Lexis 1999). The Commission found Centrex Plus to be an essential service under subsections (B) and (C). Characterizing Centrex Plus as an "essentially single line business service (1FB) offered at volume discount rates" which directly connects the user to the "local loop" necessary for two-way calling, the Commission concluded that it was an essential service and was, therefore, noncompetitive. U S West counters that the limiting language of the statute precludes an expansive construction of the services within those listed categories, thereby placing Centrex Plus outside the statutory definition of an essential service.

The core of the parties' argument is the construction to be given to the term "necessary" as used within this provision. *Black's Law Dictionary* admonishes that the word "necessary" can be defined only in context.

This word must be considered in the connection in which it is used, as it is a word susceptible of various meanings. It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought. It is an adjective expressing degrees, and may express mere convenience or that which is indispensable or an absolute physical necessity. It may mean something which in the accomplishment of a given object cannot be dispensed with, or it may mean something reasonably useful and proper, and of greater or lesser benefit or convenience, and its force and mean-

ing must be determined with relation to the particular object sought. *Kay County Excise Board v. Atchison, T. & S.F.R. Co.,* 185 Okl. 327, 91 P.2d 1087, 1088.

*Black's Law Dictionary* at 1029 (6th ed 1990). The Commission interprets "necessary" as something reasonably useful and proper, while U S West urges that the legislature intended it to mean indispensable.

The context of "necessary" in this instance is its association with *"essential* telephone service." The word "essential" is defined as "[i]ndispensably necessary; important in the highest degree; requisite. *That which is required for the continued existence of a thing."* *Black's Law Dictionary* at 546. With that definition in mind, we cannot agree that the legislature reserved to the Commission the latitude to characterize Centrex Plus as a noncompetitive service under Wyo. Stat. Ann. § 37–15–103(a)(iv)(B) and (C).[3]

The Centrex service is used to supply access between numerous lines and incidentally provides each line a connection to the local loop. Intervenors argue the "single line" nature of the service, but at the same time acknowledge that the value of Centrex Plus for U S West's competitors arises from its potential for resale as a local exchange service linking several customers at separate locations to the local loop. This argument only serves to underline the fact that the single line service is not the essential component of the Centrex Plus system. A single line service is just that, and it is uncontested that a single business line remains available to all Centrex Plus customers and potential customers in the absence of the Centrex Plus service.

We also find that Centrex Plus is not "necessary" for the connection between the end user's premises and the local network switching facility. As stated above, the single business line remains in place after the disconnection of the Centrex Plus service. Thus, Centrex Plus does not supply a necessary connection from the user's premises to the local network switching facility.

---

3. Because we find that the Commission erred as a matter of law in its interpretation of the statute, we do not reach the questions raised on the burden of proof.

We recognize that in conjunction with deregulation, a companion goal of the Act is the transition to a competitive telecommunications market in Wyoming. The bottom line in this case is that the Centrex Plus service has no functional or economic equivalent *for competitors* to gain entry into the Wyoming market using the resale of the service to become providers of local exchange services. Thus, the fiction that Centrex Plus is an essential telecommunications service is supported only by the fact that Centrex Plus is an essential tool for U S West's competitors to enter the market. As one MCI witness stated, "Centrex (or its functional equivalent) is an essential service for new entrants to use for entering and competing in the local exchange market in Wyoming."

■ We are not unsympathetic to the Commission's efforts to promote competitive opportunity in Wyoming. However, when a statute is clear and unambiguous, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Matter of Minnesota Independent Equal Access Corporation's Application for Certificate of Pub. Convenience & Necessity,* 477 N.W.2d 516, 520 (Minn.App.1991). If the Commission finds the purposes of the Act are in conflict with the language therein, then it is a matter for legislative deliberation. As of now, Centrex Plus is not an essential service as defined by statute and, therefore, is not subject to regulation as a noncompetitive service. Accordingly, this portion of the Commission's Order is reversed.

### Unreasonable Discrimination

■ The Commission also relied on Wyo. Stat. Ann. § 37–15–404(a) (Lexis 1999) as a basis for its authority, which provides in relevant part:

Protection of telecommunications consumers.

(a) No telecommunications company shall unreasonably discriminate as to customers in prices, terms or conditions of service, or in connection to or with other telecommunications companies.

■ It is important to note that the Commission did not find that the withdrawal of the Centrex Plus service was unreasonably discriminatory, but only that the method by which U S West intended to grandfather the service was precluded. The Commission concluded that by continuing to offer the service to existing customers after the legal obligation to do so had ceased, without allowing others to purchase the service, was an unreasonable discrimination against those who would like to purchase the service while it was still being offered to existing customers.

The "discrimination" which public utilities are forbidden to practice is consistently modified by such adjectives as "undue," "unreasonable," "unlawful," or "unjust." Furthermore, whether a designated rate or practice is "unduly" or "unreasonably" discriminatory normally is a question of fact to be determined by a regulatory agency having both jurisdiction and an "area of discretion."

1 A.J.G. Priest, *Principles of Public Utility Regulation,* ch.7, p.288 (1969); *see also* 86 C.J.S., *Telecommunications* § 76, p.79 (1997); *Great Western Sugar Co. v. Johnson,* 624 P.2d 1184, 1186 (Wyo.1981).

■ There is no question that § 37–15–404(a) does not contain the limiting language found in other provisions of the Act. Thus, the Commission's power to protect telecommunications consumers against unreasonable discrimination regardless of the service at issue is evident. We must, therefore, look to the record to see if the Commission's decision is supported by substantial evidence.

The Commission's factual findings are as follows:

49. The substantial evidence of record also supports this Commission's additional finding that the proposed withdrawal and grandfathering of Centrex Plus service results in unreasonably discriminatory treatment to the advantage of U S West's current Centrex Plus subscribers to the exclusion of all prospective customers for the service. The evidence of record shows that U S West will allow its current customers to continue to extend and enter into multiple extensions of their existing contracts for Centrex Plus service for terms up to and until April 29, 2005,

and continue to add additional station lines during this period. Further, only current U S West Centrex Plus subscribers will derive the sole benefit from the advantageous pricing structure of Centrex Plus service.

The significant period for extension of existing contracts to the year 2005, given that some of the existing contracts expire this year with the longest current contract term in Wyoming extending until September of 2002, (Tr., pp. 58–59) clearly provides existing customers with benefits of a service that are no longer available to the vast majority of customers. This practice of allowing customers to continue to extend their service agreements for extended periods of time is contrary to the general practice associated with the grandfathering of services where customers are allowed to continue to receive the service until such time as contractual obligations are fulfilled or an alternative better service is provided. The Commission is not persuaded by U S West's justification that the extended availability of the service on a grandfathered basis until the year 2005 is necessary to allow customers an adequate time to assess their respective service needs (Tr., p. 64).

Further, new potential customers desiring Centrex Plus type services will be deprived of the opportunity to subscribe to a functionally and similarly priced service for a period of time until the new proposed service offering is made available (Tr., pp. 49, 60). This appears contrary to the past practices of U S West of having replacement Centrex type service offerings available at the time of grandfathering other Centrex type services (Tr., p. 72). It is not contested that U S West proposed to offer the service to existing customers for up to nine years, while ensuring that new customers would be unable to subscribe. There is sufficient record support for the factual finding that new customers, such as Intervenors, would wish to subscribe to the services but would be prevented from doing so. Consequently, the Commission's finding that U S West's plan to grandfather the Centrex Plus service unreasonably discriminated against those potential customers wishing to use to

the service during the same period is supported by the record. Therefore, we affirm that portion of the Commission's order relating to the plan to grandfather the Centrex Plus service.

*Jurisdiction to Construe the Federal Act*

The Federal Telecommunications Act of 1996, Public Law No. 104–104, 11 Stat. 56 (1996) (codified at 47 U.S.C. §§ 151 *et seq.*) established a comprehensive framework under which local exchange telecommunications markets will be opened to competition. In its Order, the Commission found that the proposed discontinuance and grandfathering of the Centrex Plus service violated specific provisions of the Federal Act and further held that the obligation to resell Centrex Plus under the Federal Act continued despite U S West's plans to withdraw the service. U S West argues that the Commission had no authority to so rule. We must agree.

Section 37–15–401(a)(vi) states that the Commission may "[r]egulate telecommunications companies only as provided for in this chapter." Neither the Commission's Order, nor the briefs supporting that Order, identifies any provision of the Act, or any citation to authority, which allows the Commission to determine if there is a violation of 47 U.S.C. § 251. Indeed, the Federal Act clearly states that the Federal Communication Commission is to implement this provision.

We have repeatedly held that "an administrative agency has limited powers and can do no more than it is statutorily authorized to do." *U S West Communications, Inc. v. Pub. Serv. Comm'n,* 958 P.2d 371, 374, (Wyo.1998); (quoting *Tri County Tel. Ass'n, Inc. v. Pub. Serv. Comm'n,* 910 P.2d 1359, 1361 (Wyo.1996)); *Matter of Mountain States Tel. & Tel. Co.,* 745 P.2d 563, 569 (Wyo.1987). We cannot, as the Commission urges, transfer the general intent of the Federal Act to confer specific powers on the Commission which were not given by the Wyoming legislature. Consequently, we must find that the Commission went beyond its statutory authority in determining whether there was a violation of the

Federal Act and, therefore, vacate that portion of the Commission's decision.

### CONCLUSION

The Centrex Plus service is a competitive telecommunications service as defined by Wyo. Stat. Ann. § 37–15–103(a)(iv). Because Wyo. Stat. Ann. § 37–15–404(c) requires the Commission's approval only for discontinuance of a noncompetitive service, the Commission exceeded its authority in denying the withdrawal of Centrex Plus. However, the Commission's determination that U S West's plans to grandfather the service were unreasonably discriminatory is supported by substantial evidence. The Commission's Order is, therefore, affirmed in that respect. Finally, the Commission was without jurisdiction to determine whether the withdrawal and grandfathering plan were in violation of the Federal Telecommunications Act, and that portion of the Order is vacated.

THOMAS, Justice, dissenting, with whom GOLDEN, Justice, joins.

I can support completely the well-reasoned opinion of the majority except for that part that is found under the subtitle "Unreasonable Discrimination." At that juncture, it seems to me that the majority opinion creates a fish with feathers or perhaps a bird with scales. In the initial ruling, under the subtitle "Competitive and Noncompetitive Services," the majority correctly construes the statutory scheme to the end that Centrex Plus is "not an essential service as defined by statute and, therefore, is not subject to regulation as a noncompetitive service." *Op.* at 1067. The majority, however, then proceeds to hold that Centrex Plus is subject to regulation because the plan of U S West to discontinue offering that service to potential customers while honoring the terms of its existing contracts amounted to "unreasonable discrimination" contrary to the provisions of Wyo. Stat. Ann. § 37–15–404(a) (Lexis 1999), and for that reason became subject to the regulatory power of the Public Service Commission. As I understand the majority opinion, so long as there is a customer for the service, the Public Service Commission can regulate pursuant to Wyo. Stat. Ann. § 37–15–404(a).

In a different context, we have spoken of limitations upon the regulatory authority of the Public Service Commission in this way:

"An administrative board has no power or authority other than that particularly conferred upon it by statute or by construction necessary to accomplish the aims of the statute." *Tri–County Electric Association, Inc. v. City of Gillette* [Wyo.], 525 P.2d [3] at 9 [ (1974) ].

See also 1 A. Priest, *Principles of Public Utility Regulation,* at 9–10 (1969).

We then look to the statutes to decide whether the legislature granted to PSC the authority it purported to exercise in issuing its order to Mountain Bell. Section 37–2–112, W.S.1977, grants to PSC the "general and exclusive power to regulate and supervise every public utility" within this state in accordance with the statutes. Section 37–2–127, W.S.1977, further provides:

"In addition to the powers herein specifically granted, the commission shall have such implied or incidental powers as may be necessary and proper, effectually to carry out, perform and execute all the power so granted."

These broad powers can be exercised only over a public utility, however. *Public Service Commission v. Formal Complaint of WWZ Company* [Wyo., 641 P.2d 183 (1982) ], *supra;* § 37–2–112, W.S.1977. The definition of telephone service as a "public utility" is:

"Any plant, property or facility for the transmission to or for the public of telephone messages, for the conveyance or transmission to or for the public of telegraph messages, or for the furnishing of facilities to or for the public for the transmission of intelligence by electricity; * * *." § 37–1–101(a)(vi)(B), W.S. 1977.

The rule of strict construction dictates that any jurisdiction in PSC is limited to those functions of Mountain Bell that are "to or for the public."

The conclusion that the legislature did not intend to extend to PSC jurisdiction over services which are not furnished to or for the public is consistent with generally accepted jurisdictional limits on regulatory bodies. We have espoused the general proposition that a utility service may have both public and private functions, and while it is subject to regulation in matters of public function, it is not when it operates in its private mode. *State Board of Equalization v. Stanolind Oil and Gas Company,* 54 Wyo. 521, 94 P.2d 147 (1939). *See also Southern Pacific Company v. Arizona Corporation Commission,* Ariz., [98 Ariz. 339] 404 P.2d 692 (1965); *City of Phoenix v. Kasun,* 54 Ariz. 470, 97 P.2d 210 (1939); *Associated Mechanical Contractors of Arkansas v. Arkansas Louisiana Gas Co.,* 225 Ark. 424, 283 S.W.2d 123 (1955); *University Hills Beauty Academy, Inc. v. Mountain States Telephone and Telegraph Company,* 38 Colo.App. 194, 554 P.2d 723 (1976); *Oklahoma Gas and Electric Company v. Corporation Commission,* Okla., 543 P.2d 546 (1975); 64 Am.Jur.2d *Public Utilities* § 1, at 550 (1972); 73B C.J.S. *Public Utilities* § 66, at 314–315 (1983).

*Matter of Mountain States Tel. and Tel. Co.,* 745 P.2d 563, 569 (Wyo.1987).

In this instance, the majority clearly articulates a legislative intention to withdraw Centrex Plus from the regulatory authority of the Public Service Commission. Applying the rule of strict construction, a service that is withdrawn from regulatory authority is no different for jurisdictional purposes from a service that is not furnished to or for the public. In either instance, the legislative intent to foreclose regulation must be recognized. I would rule that the legislature, in this situation, clearly intended to place Centrex Plus beyond the pale of regulation by the Public Service Commission.

I am confounded (in the fullest meaning of that word), as will be the legislature and the vast majority of the public, other than the intervenors, by the notion that the legislature clearly intended to remove a particular service from the realm of regulation, but also intended that it should be subject to regulation by the Public Service Commission. We

should recognize that the intervenors in this case are different from the existing customers because they are not consumers in the classic sense. They are simply brokers who desire to purchase for resale rather than use Centrex Plus for themselves.

I have a clear grasp of the motivation of the intervenors. They want to be able to resell the Centrex Plus service to their customers without assuming the burden of investing capital or development into creating the service. Their vision of competitive opportunity is that they are entitled to rely upon U S West's capital investment and its development effort to lure U S West customers away and into the customer base of the intervenors without having to devote the effort and capital that are the usual concomitants of competition. We are forcing U S West into exactly the subsidization of competitors that we appear to criticize in the majority opinion. *Op.* at 1067. Any theory of a free market economy must eschew this concept of competitive enterprise.

The only alternative available to U S West is breach of its existing contracts with its customers. This causes me to believe that the Public Service Commission is engaging in the kind of meddling in contractual affairs that we criticized in *Union Telephone Co., Inc. v. Wyoming Public Service Com'n,* 910 P.2d 1362 (Wyo.1996). Certainly, under the majority opinion, U S West must either provide a service to its potential competitors for resale at more favorable terms than U S West can offer the service for, or it must breach existing contracts. The legislature could not have intended to impose that choice.

I close with a reminder of the legislative purpose of the Wyoming Telecommunications Act of 1995. Wyo. Stat. Ann. § 37–15–101—37–15–501 (Lexis 1999). The statute provides:

It is the intent of this act to ensure essential telecommunications services are universally available to the citizens of this state while encouraging the development of new infrastructure, facilities, products and services. The provision of telecommunications services has been developed and regulated under a monopolistic environ-

ment. This act recognizes the increasingly competitive nature of the telecommunications industry and the benefits of competition. It is the intent of this act to provide a transition from rate of return regulation of a monopolistic telecommunications industry to competitive markets and to maintain affordable essential telecommunications services through the transition period, and the provisions of this act shall be construed to achieve those goals.

Wyo. Stat. Ann. § 37–15–102. I see little in the Public Service Commission order that will encourage "development of new infrastructure, facilities, products and services." Centrex Plus has been removed from the "monopolistic environment." Instead, the effect of permitting the regulation under the guise of Wyo. Stat. Ann. § 37–15–404(a) is to afford an unfair advantage to the intervenors, which ultimately must have a deleterious effect on competition. The contradiction encompassed in the majority opinion is bad public policy in light of the purpose of the Wyoming Telecommunications Act of 1995.

I would reverse the aspect of the Public Service Commission order that it justifies by a finding of unreasonable discrimination in violation of Wyo. Stat. Ann. § 37–15–404(a). I would hold that since the service is not subject to regulation as a noncompetitive service, it was withdrawn from any regulatory jurisdiction of the Public Service Commission.