**U S WEST COMMUNICATIONS, INC., Appellant (Petitioner),**

v.

**WYOMING PUBLIC SERVICE COMMISSION; Steve Ellenbecker, Doug Doughty, and Kristin H. Lee, in their official capacities as Commissioners of the Wyoming Public Service Commission, Appellees (Respondents),**

and

**AT & T Communications of the Mountain States; MCI Telecommunications Corporation; and McLeod Telemanagement, Inc., n/k/a McLeod USA, Intervening Appellees.**

No. 97–146.

Supreme Court of Wyoming.

Dec. 5, 2000.

Representing Appellant: Paul J. Hickey, Roger Fransen and Mary A. Throne of Hickey, Mackey, Evans & Walker, Cheyenne, WY.

Representing Appellees: William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; Carrol Verosky, Assistant Attorney General; and Harry Ivey, Assistant Attorney General, Cheyenne, WY.

Representing Intervening Appellees: Alan B. Minier of Rothgerber, Appel, Powers & Johnson, Cheyenne, WY; Michel Singer, Denver, CO; Elizabeth Zerga of Herschler, Freudenthal, Salzburg, Bonds & Zerga, P.C., Cheyenne, WY; and William A. Haas and David R. Conn, Cedar Rapids, IA.

Before LEHMAN, C.J., and THOMAS, MACY,* and GOLDEN, JJ., and SPANGLER, District Judge, Retired.

THOMAS, Justice.

Following the filing of the original opinion of the Court in this case, *U S West Communications, Inc. v. Wyoming Public Service Com'n,* 988 P.2d 1061 (Wyo.1999), U S West Communications, Inc. (U S West) and two of the intervenors, AT & T Communications of the Mountain States and McLeod Telemanagement, Inc., n/k/a McLeod USA (the Intervenors), presented petitions for rehearing. U S West challenges the determination that its plan to grandfather Centrex Plus service is unreasonably discriminatory, and further challenges the Public Service Commission's (Commission) jurisdiction over Centrex Plus as a competitive service. The Intervenors, on the other hand, question our holding that Centrex Plus is a competitive service. There was no challenge to our holding that the Commission was without jurisdiction to determine whether there had been a violation of the Federal Communications Act. In the Order Granting Petitions for Rehearing, we ordered the parties to address these questions:

What is the proper interpretation of Wyo.Stat.Ann. § 37–15–103(a)(iv) (Lexis 1999)[1] in light of the language contained therein and the underlying purposes of the Wyoming Telecommunications Act of 1995? How does that interpretation correspond to, and interrelate with, telecommunications technologies such as POTS and Centrex?

In addition, the parties on rehearing briefed additional issues. In·Appellant U S West Communications, Inc.'s Brief on Rehearing, these issues were addressed:

I.  What is the proper interpretation of Wyo.Stat. § 37–15–103(a)(iv) in light of the language contained therein and the underlying purposes of the Wyoming Telecommunications Act of 1995 and how does that interpretation correspond to, and interrelate with, telecommunications technologies such as Plain Old Telephone Service (POTS) and Centrex Plus?

2.  Was the court's ruling that allowed the Wyoming Public Service Commission to prevent U S WEST Communications, Inc.'s withdrawal of its Centrex Plus service by application of Wyo.Stat. § 37–15–404(a) inconsistent with its finding that Centrex Plus is a competitive service that can be withdrawn without Commission approval under Wyo.Stat. § 37–15–404(c)?

III.  Did the court err in finding that U S WEST Communications, Inc[.]'s Centrex Plus service is a competitive service under the Wyoming Telecommunications Act of 1995?

---

* Retired June 2, 2000.

1. Wyo.Stat.Ann. § 37–15–103(a)(iv) (Lexis 1999) reads:

(iv) "Essential telecommunications service" means a customer's access to service that is necessary for the origination or termination, or both, of two-way, switched telecommunications for both residential and business service within a local exchange area. Essential telecommunications services are limited to:

(A) Access to interexchange services provided by interexchange telecommunications companies;

(B) Single line flat-rate or single line measured residence or business service;

(C) Transmission service and facilities necessary for the connection between the end user's or customer's premises or location and the local network switching facility including the necessary signaling service used by customers to access essential telecommunications services;

(D) Services necessary to connect 911 emergency services to the local network;

(E) Switched access, which for the purposes of this chapter shall mean the switching and transport necessary to connect an interexchange telecommunications company with the local exchange central office for the purposes of originating or terminating, or both, the interexchange telecommunications company's switched telecommunications service.

In McLeod USA and AT & T Communications of the Mountain State's Joint Brief on Rehearing, these issues were argued:

I. The agency interpretation of Wyo.Stat. 37–15–104 was correct, "Centrex Plus is a transmission service necessary for the connection between the end user's or customer's premises or location and the local network switching facility including necessary signaling service to access other essential services."

II. The Public Service Commission of Wyoming had jurisdiction pursuant to W.S. § 37–15–404(a) and correctly concluded that U S West's plan to withdraw Centrex Plus from new customers and competitive resellers while grandfathering and permitting renewals for existing Centrex customers was unreasonably discriminatory under the Wyoming Telecommunications Act of 1995.

We adhere to our decision in the first opinion that Centrex Plus "is not an essential service as defined by statute and, therefore, is not subject to regulation as a noncompetitive service." *U S West Communications, Inc.*, 988 P.2d at 1067. We maintain the reversal of the order of the Commission that ruled to the contrary. In this opinion on rehearing, however, we also reverse the ruling of the Commission that U S West's plan to grandfather Centrex Plus to existing customers while not offering the service to new customers, particularly the Intervenors, was unreasonably discriminatory and became subject to regulation by the Commission pursuant to Wyo.Stat.Ann. § 37–15–404(a) (Lexis 1999). That statute provides, in pertinent part, "[n]o telecommunications company shall unreasonably discriminate as to customers in prices, terms or conditions of service, or in connection to or with other telecommunications companies." Wyo.Stat.Ann. § 37–15–404(a). For the reasons set forth below, that aspect of the Commission's order also is reversed, and the case is remanded to the Commission for the entry of an order in accordance with this opinion.

For the convenience of the reader, we reiterate our statement of the facts set forth in the first opinion:

Centrex Plus (also known as Centron) is an optional business service which allows a customer using a number of telephone lines to include the lines in a single-switched system. Each individual telephone can make and receive calls from other telephones within the system, typically by dialing only the last four digits of the called number. The service can also make and receive calls from telephones outside the system through connection and access to the central office switch. Utilizing physical facilities owned by U S West, Centrex Plus includes standard features such as call forwarding, call hold, call waiting, conference calling, individual line billing, last number redial, speed calling and other features. Although the features are similar to a private branch exchange (PBX), a PBX differs from Centrex Plus in that the PBX utilizes a switch located on the customer's property. The customer owns or leases the switch and, unlike Centrex Plus' direct access to the public switched network, the PBX access is through a trunk connection to U S West's central office.

On February 15, 1996, U S West filed a price schedule with the Public Service Commission (the Commission) in which it gave the Commission notice that it intended to discontinue offering Centrex Plus to new customers as of February 6, 1996. U S West further stated its intention to continue Centrex Plus service to existing customers, subject to certain revised terms and conditions, through the duration of its longest existing contract for the service that ends on April 29, 2005. Pursuant to these plans, U S West proposed to move the service to the obsolete section of its price schedules.

Shortly thereafter, Intervenors filed separate objections to U S West's filing, generally contending that the withdrawal of Centrex Plus service deterred Intervenors' access to the Wyoming local exchange market through the resale of the service, thus rendering U S West's plans anti-competitive. Intervenors also claimed the grandfathering of Centrex Plus services solely to its existing customers unreasonably discriminated against new customers

desiring the service. In response to the objections, the Commission scheduled an investigation and hearing on May 6, 1996. After the contested case hearing, the Commission issued a Notice and Order Setting Additional Public Hearing to reopen the record for further legal argument and evidence. This order directed U S West to submit evidence showing that Centrex Plus is a service subject to competition.

U S West filed a motion to set aside the notice, alleging any burden of proof resided with Intervenors because Centrex Plus was a competitive service by statutory definition and had been recognized as such in previous Commission rulings. U S West concluded that the withdrawal of the service was, therefore, not subject to the Commission's approval. U S West's motion was denied, and no party presented additional evidence at the subsequent hearing.

The Commission issued its Memorandum Opinion, Findings and Order on September 6, 1996, denying U S West's movement of Centrex Plus service to the obsolete section of its price schedules and the grandfathering of the service. The Commission concluded that Centrex Plus service is an "essential telecommunications service" as defined in Wyo.Stat.Ann. § 37–15–103(a)(iv), and therefore subject to regulation as a noncompetitive local exchange service pursuant to Wyo.Stat.Ann. § 37–15–202(c) and 37–15–404(c). The Commission further determined the proposed withdrawal and grandparenting of Centrex Plus service "unreasonably discriminates" in favor of U S West's current subscribers, to the exclusion of other prospective customers including other potential telecommunications companies. In addition, the Commission found the proposed withdrawal of Centrex Plus service violated certain provisions of the Federal Telecommunications Act of 1996, specifically, 47 U.S.C. §§ 251(b)(1) and 251(c)(4).

After the Commission's denial of U S West's petition for rehearing, U S West then filed a petition for review in the district court. The district court, on its own motion, certified the case to this court pursuant to W.R.A.P. 12.09.

*U S West Communications, Inc.,* 988 P.2d at 1063–64.

■ The Court is now persuaded that Centrex Plus is not subject to regulation on the grounds that the plan of U S West to discontinue offering that service to potential customers while honoring the terms of its existing contracts constitutes "unreasonable discrimination" contrary to the provisions of Wyo.Stat.Ann. § 37–15–404(a). That conclusion is demanded by the holding in the case that the Centrex Plus service is not subject to regulation as a non-competitive service. We cannot discern any intention on the part of the legislature to subject a competitive service to regulation under the statutory provision foreclosing discrimination.

■ In a different context, we have spoken to limitations upon the regulatory authority of the Commission in this way:

> "An administrative board has no power or authority other than that particularly conferred upon it by statute or by construction necessary to accomplish the aims of the statute." *Tri–County Electric Association, Inc. v. City of Gillette, supra,* 525 P.2d [3] at 9 [(Wyo.1974) ].

See also 1 A. Priest, Principles of Public Utility Regulation, at 9–10 (1969).

We then look to the statutes to decide whether the legislature granted to PSC the authority it purported to exercise in issuing its order to Mountain Bell. Section 37–2–112, W.S.1977, grants to PSC the "general and exclusive power to regulate and supervise every public utility" within this state in accordance with the statutes. Section 37–2–127, W.S.1977, further provides:

> "In addition to the powers herein specifically granted, the commission shall have such implied or incidental powers as may be necessary and proper, effectually to carry out, perform and execute all the power so granted."

These broad powers can be exercised only over a public utility, however. *Public Service Commission v. Formal Complaint of WWZ Company, supra,* [641 P.2d 183 (Wyo.1982) ]; § 37–2–112, W.S.1977. The

definition of telephone service as a "public utility" is:

"Any plant, property or facility for the transmission to or for the public of telephone messages, for the conveyance or transmission to or for the public of telegraph messages, or for the furnishing of facilities to or for the public for the transmission of intelligence by electricity; * * *." § 37–1–101(a)(vi)(B), W.S. 1977.

The rule of strict construction dictates that any jurisdiction in PSC is limited to those functions of Mountain Bell that are "to or for the public."

The conclusion that the legislature did not intend to extend to PSC jurisdiction over services that are not furnished to or for the public is consistent with generally accepted jurisdictional limits on regulatory bodies. We have espoused the general proposition that a utility service may have both public and private functions, and while it is subject to regulation in matters of public function, it is not when it operates in its private mode. *State Board of Equalization v. Stanolind Oil and Gas Company*, 54 Wyo. 521, 94 P.2d 147 (1939). See also *Southern Pacific Company v. Arizona Corporation Commission*, Ariz., [98 Ariz. 339] 404 P.2d 692 (1965); *City of Phoenix v. Kasun*, 54 Ariz. 470, 97 P.2d 210 (1939); *Associated Mechanical Contractors of Arkansas v. Arkansas Louisiana Gas Co.*, 225 Ark. 424, 283 S.W.2d 123 (1955); *University Hills Beauty Academy, Inc. v. Mountain States Telephone and Telegraph Company*, 38 Colo.App. 194, 554 P.2d 723 (1976); *Oklahoma Gas and Electric Company v. Corporation Commission*, Okla., 543 P.2d 546 (1975); 64 Am.Jur.2d *Public Utilities* § 1, at 550 (1972); 73B C.J.S. *Public Utilities* § 66, at 314–315 (1983). *Matter of Mountain States Tel. and Tel. Co.*, 745 P.2d 563, 569 (Wyo.1987).

It is clear that the legislature intended to withdraw the Centrex Plus service from the regulatory authority of the Commission. A service that is withdrawn from regulatory authority is no different, for jurisdictional purposes, from a service that is not furnished to or for the public. It follows that our holding that Centrex Plus is a competitive service forecloses further regulation by the Commission.

This determination is consistent with the prior holding that the service is not subject to regulation. If U S West were required to subsidize the Intervenors by providing this service, we reach a determination that is not consistent with the criticism offered in the previous majority opinion that the fiction that Centrex Plus is an essential telecommunications service is supported only by the fact that it is an essential feature for entry of competitors in the market. The only alternative to avoid Commission regulation that would have been available to U S West would be breaking its existing contracts with other customers. If the Commission required that, it would be engaging in the kind of meddling in contractual affairs that we criticized previously in *Union Telephone Co., Inc. v. Wyoming Public Service Com'n*, 910 P.2d 1362, 1365 (Wyo.1996).

We close with a reminder of the legislative purpose of the Wyoming Telecommunications Act of 1995, Wyo.Stat.Ann. §§ 37–15–101 through 37–15–501 (Lexis 1999). The statute provides:

It is the intent of this act to ensure essential telecommunications services are universally available to the citizens of this state while encouraging the development of new infrastructure, facilities, products and services. The provision of telecommunications services has been developed and regulated under a monopolistic environment. This act recognizes the increasingly competitive nature of the telecommunications industry and the benefits of competition. It is the intent of this act to provide a transition from rate of return regulation of a monopolistic telecommunications industry to competitive markets and to maintain affordable essential telecommunications services through the transition period, and the provisions of this act shall be construed to achieve those goals.

Wyo.Stat.Ann. § 37–15–102. Enforcement of this particular order by the Commission would not encourage "development of ·new infrastructure, facilities, products and services." Wyo.Stat.Ann. § 37–15–102. The

Centrex Plus service has been removed from any "monopolistic environment," and the contradiction which would be posed by permitting regulation instead would have a deleterious effect upon competition.

The order of the Commission is reversed and remanded with instructions to enter an order consistent with this opinion.

LEHMAN, Chief Justice, dissenting.

After long reflection and struggle with the issues raised in this case, I have reached the conclusion that our original decision was incorrect; therefore, I must respectfully dissent. The Wyoming Telecommunications Act of 1995 (the Act) was intended to provide a transition from a monopolistic regulatory environment to a competitive market while maintaining affordable, universal telecommunications services for the citizens of Wyoming. Wyo.Stat.Ann. § 37–15–102 (LEXIS 1999). I fear that the result of the majority decision will be to impede the development of a competitive market in telecommunications, ultimately depriving Wyoming consumers of the benefits and expanded choices associated with that competition.

My main point of departure is from the conclusion that Centrex Plus service is not subject to regulation as a non-competitive service. Op. at 725. To the contrary, I think it is clear under the Act that Centrex Plus is a non-competitive service subject to regulation by the Commission. By statute, local exchange services provided by a local exchange company are considered non-competitive services subject to regulation by the Commission. Wyo.Stat.Ann. § 37–15–202(c) (LEXIS 1999). "Local exchange service" is defined as "the provision of essential telecommunications service within a local exchange area[.]" Wyo.Stat.Ann. § 37–15–103(a)(viii) (LEXIS 1999).

This brings us to the key statutory provision, the definition of "essential telecommunications service," which

> means a customer's access to service that is necessary for the origination or termination, or both, of two-way, switched telecommunications for both residential and business service within a local exchange

area. Essential telecommunications services are limited to:

> (A) Access to interexchange services provided by interexchange telecommunications companies;
>
> (B) Single line flat-rate or single line measured residence or business service;
>
> (C) Transmission service and facilities necessary for the connection between the end user's or customer's premises or location and the local network switching facility including the necessary signaling service used by customers to access essential telecommunications services;
>
> (D) Services necessary to connect 911 emergency services to the local network;
>
> (E) Switched access, which for the purposes of this chapter shall mean the switching and transport necessary to connect an interexchange telecommunications company with the local exchange central office for the purpose of originating or terminating, or both, the interexchange telecommunications company's switched telecommunications service[.]

Wyo.Stat.Ann. § 37–15–103(a)(iv) (LEXIS 1999). Contrary to the conclusions of the original majority opinion, I believe that the statute defines what is "necessary for the origination or termination, or both, of two-way, switched telecommunications for both residential and business service within a local exchange area" through its own terms. The following sentence of the statute states that "essential telecommunications services" are limited to five distinct telecommunications functions listed in subsections (A) through (E). In other words, the statute describes what is an essential telecommunications service in the first sentence and then goes on to define it through a list of specific telecommunications functions. If a telecommunications service accomplishes the functions listed in the subsections, then, by definition, it is an "essential telecommunications service." In this case, the Commission found that Centrex Plus service provides each of the functions listed and, hence, was an "essential telecommunications service." Whether a particular service provides those specific functions or not is a question of fact to be determined on a case-by-case basis in light of the technolog-

ical characteristics of that service. The Commission's decision that Centrex Plus provides each of those functions is not clearly erroneous. Therefore, I would affirm the Commission's determination that Centrex Plus is a non-competitive, essential telecommunications service subject to regulation.

It is undisputed that U S West's erstwhile competitors AT & T and McLeod have stated that if U S West is allowed to withdraw Centrex Plus, they will no longer offer local exchange telecommunications services in Wyoming. The result of such an action would be to perpetuate U S West's monopoly on those services in this state to the detriment of our citizens. In today's high tech economy, the importance of modern, cutting edge telecommunications services cannot be overstated. History has shown that competition engendered by a market economy is the best mechanism for creating an environment for the development and deployment of new technologies. The Legislature recognized this when it passed the Wyoming Telecommunications Act of 1995 with the avowed purpose of encouraging competition in the telecommunications market. However, this case and several others that have come before us recently have made it clear that the Act, as currently written, is inadequate to the task.

SPANGLER, District Judge (Ret.), dissenting.

A telecommunications company providing a noncompetitive service cannot discontinue the service without approval of the Wyoming Public Service Commission. Wyo.Stat.Ann. § 37–15–404(c) (Lexis 1999). The Commission conducted hearings and made a finding of fact that the Centrex Plus service is an essential, noncompetitive service, as defined by Wyo.Stat.Ann. § 37–15—103(a)(iv)(C) (Lexis 1999). There is substantial evidence in the record to support this finding. Therefore, I would affirm the decision of the Commission that it has jurisdiction over this service and that Centrex Plus cannot be terminated without Commission approval.